THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DON HARRIS, Defendant-Appellant.

Second District   No. 2—88—1257

Opinion filed October 15, 1990.

G. Joseph Weller and Manuel S. Serritos, both of State Appellate Defender's Office, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE UNVERZAGT delivered the opinion of the court:

Defendant, Don Harris, was convicted of residential burglary (Ill. Rev. Stat. 1987, ch. 38, par. 19—3) and felony theft (Ill. Rev. Stat. 1987, ch. 38, par. 16—1) and sentenced to four years' imprisonment. Defendant appeals, contending he was prejudiced when the prosecutor elicited a confession of a nontestifying codefendant. Based on our review of the facts of this cause, we believe the actual issue is whether the defendant was prejudiced when a witness made a reference to the confession of the nontestifying codefendant. The State argues that the defendant waived the alleged error and that the plain error rule does not apply in this situation.

The evidence adduced at trial revealed that the apartment of Robert Kievert was burglarized on December 23, 1987. Twenty-three wrapped Christmas gifts, including an opal ring, were missing. The police found no signs of a forced entry.

Stacey Harris, who was not related to defendant, testified that she was staying in the apartment opposite the Kievert apartment. On December 23, 1987, between 5 and 6 p.m., she heard a knock in the

corridor outside her door. She peered through the peephole in her door and saw two men removing gift-wrapped packages from Kievert's apartment. One man was tall, black, wearing a green hat, gray jacket and sweat pants. The other was short, black and wearing a brown leather coat. The shorter man wiped the door knob, and the two men left. After calling the police, Ms. Harris worked with the police to compose a plastic sketch of their faces, one of which was introduced into evidence. She also identified defendant as the shorter man in court. She estimated she saw defendant's profile for 30 seconds and his full face for three to five seconds in the dim light of the corridor.

Detective Donald Janus of the Woodridge police department testified that he worked with Ms. Harris to compile a description of the two men. Six days later, Janus had a discussion with a man known as "Tall Paul" Coleman. Two days later, Janus interviewed defendant in the Woodridge police department. Janus read defendant his *Miranda* rights, and defendant signed a waiver of the rights. Janus did not record the interview; no one else was present for the full interview, and no written transcript was made of the interview for defendant to sign.

Detective Janus then gave the following testimony:

"Q. After the Defendant signed the waiver and agreed to talk to you, can you tell the ladies and gentlemen of the jury what you asked of him or said to him at that point?

A. I told him that Paul Coleman had confessed to me, that I had recovered the opal diamond ring that was taken and that I had an eyeball witness putting him and Coleman leaving that apartment.

Q. Did the Defendant say anything at that point?

A. Yes, sir.

Q. What did he say?

A. He denied it.

Q. When you say denied it, did he say anything in particular?

A. He said he didn't do it.

Q. What did you say to him after that?

A. I told him that we would not be here on this afternoon, the first day of the new year, if we did not believe and have sufficient evidence to charge him with residential burglary.

Q. Did he say anything in response to that statement?

A. Yes, sir, he did.

Q. What did he say?

A. Can I back up?

Q. Well, did you say anything else [to] him at that point?

A. Yes, I did.

Q. What did you say to him?

A. I asked him if it was his idea it was [*sic*] to enter the apartment.

Q. Did he say anything in response to that question?

A. Yes, sir, he did.

Q. What did the Defendant Don Harris say?

A. He said he didn't really remember whose idea it was, his or Coleman's.

Q. What else did he say at that point or did you say to him?

A. He related to me that he entered the apartment, removed the Christmas gifts, and then he and Paul left the apartment, going out the west door to the next, to a vacant building next-door."

Janus then testified that they discussed which building next door defendant entered. In court, Janus acknowledged a diagram, which he said defendant drew, which showed Kievert's building, the adjacent buildings and the location to which the two men removed the packages.

On cross-examination, defense counsel inquired regarding what Janus said to initiate the interview. Janus again testified that "I told [defendant] what Paul Coleman had told me" and that Janus told him there was enough evidence to charge defendant with residential burglary. Janus also admitted that the opal ring, which had been later identified by Kievert, was recovered not from defendant but from Coleman's girlfriend.

On redirect examination, Janus stated defendant said he and Coleman entered the apartment with a key and removed the gift-wrapped packages to a vacant apartment. They opened some of the packages but left some behind. Janus said defendant related to him that Coleman later told defendant that someone else had stolen the packages left behind. After Janus had determined the location of the vacant building from defendant's diagram, Janus visited the apartment and found only the remains of some unidentified wrapping paper.

Kenneth Davenport testified as defendant's witness. Between 4 and 4:15 p.m. he left his apartment to go to his job. Outside his apartment, he passed two men whom he had never seen before. His description of the two men was similar to that of the two men Ms. Harris had given. Davenport said hello and took a good look at their faces for a minute in clear light because he was suspicious of stran-

gers after his own apartment had been burglarized. Davenport, who was acquainted with defendant but not Coleman, stated that the shorter man with the leather jacket was not defendant.

The defense also recalled Detective Janus to the stand, who admitted that the descriptions of the two suspects given by Ms. Harris and Davenport were virtually identical in terms of dress, hat, height, color, age and sex. However, during cross-examination, Janus reproduced the facial composite for the shorter man as described by Davenport, which used a different chin, nose, hairstyle, lips and hair than the facial composite as described by Ms. Harris.

A police investigator testified that the apartment corridor was dimly lit by a small bulb covered with a yellow globe on the ceiling directly in front of Kievert's apartment.

During closing arguments, as part of the prosecutor's narrative describing the sequence of events used in obtaining defendant's confession, the prosecutor mentioned that Coleman had confessed to the crime. In his rebuttal argument, the prosecutor again reminded the jury that Janus, as he related the facts of the interview with defendant, had told the jury that Coleman had confessed and told defendant that Coleman confessed. No limiting instruction concerning Coleman's statement was offered by defendant to be given to the jury. The jury found defendant guilty of both charges, and defendant appeals.

Defendant contends that the prosecutor violated several rules in eliciting the fact that Coleman had confessed, including fundamental fairness, the hearsay rule and the right to confront an adverse witness. (*People v. Duncan* (1988), 124 Ill. 2d 400, 406.) However, because defendant did not object to the testimony and did not file a post-trial motion concerning the testimony, defendant has asked us to consider the issue under the plain error rule.

■■ A party waives an issue for appellate review if he fails to object at trial and fails to raise the issue in a post-trial motion. (*People v. Reid* (1990), 136 Ill. 2d 27, 38; *People v. Enoch* (1988), 122 Ill. 2d 176, 186.) However, this court may notice errors under the plain error rule pursuant to Supreme Court Rule 615(a) (107 Ill. 2d R. 615(a)). The plain error rule permits a reviewing court to consider in two circumstances a trial error not properly preserved for review. In the first instance, where the evidence in a criminal case is closely balanced, a reviewing court may consider a claimed error not properly preserved so as to preclude argument of the possibility that an innocent man may have been wrongly convicted. The plain error rule may also be invoked where the error is so fundamental and of such magnitude that the accused was denied a fair trial. (*People v. Herrett*

(1990), 137 Ill. 2d 195, 210; *People v. Walton* (1990), 199 Ill. App. 3d 341, 346-47.) Because there was substantial evidence in defendant's favor, and the error alleged was a great one, we will review the matter to preclude the argument that an innocent man may have been wrongly convicted.

■■ ■ It has long been the rule that out-of-court admissions and confessions by a nontestifying codefendant are inadmissible evidence. Such inculpatory statements violate a defendant's right to confront an adverse witness and violate fundamental fairness by introducing highly prejudicial hearsay. (*People v. Duncan* (1988), 124 Ill. 2d 400, 406; *People v. Harris* (1990), 198 Ill. App. 3d 1002, 1008.) Not even a limiting instruction can extricate the harm to a defendant caused by such statements. (*Bruton v. United States* (1968), 391 U.S. 123, 124-25, 20 L. Ed. 2d 476, 478-79, 88 S. Ct. 1620, 1621-22.) However, in a joint trial of codefendants, a confession by one defendant may be used against him if all references to the other defendant are redacted, including even the anonymous references to him. (*Richardson v. Marsh* (1987), 481 U.S. 200, 211, 95 L. Ed. 2d 176, 188, 107 S. Ct. 1702, 1709.) A defendant who is tried separately is entitled to have his guilt or innocence determined based solely upon the evidence against him without being prejudiced according to what has happened to another. *People v. Sullivan* (1978), 72 Ill. 2d 36, 42.

■■ There are a number of distinctions between the cause before the court and the cases where a defendant has been prejudiced by such testimony. First, the text of Coleman's confession was never before the court. Janus never explicitly stated that Coleman implicated defendant. Second, the State did not argue that because Coleman confessed, defendant was guilty. The State did not use Coleman's confession as evidence against defendant. Thus, this case differs from the outrageous conduct in *Sullivan* where the prosecutor argued that because two accomplices pleaded guilty, the defendant must also have been guilty. (72 Ill. 2d at 40-41.) Third, the statement was ot hearsay because it was not offered for the truth of the matters stated therein. *People v. Rogers* (1980), 81 Ill. 2d 571, 577.

Defendant was convicted based on his own devastating confession, not the unrevealed confession of Coleman. The jury could reasonably believe defendant confessed because Janus, using the map defendant had drawn, was able to locate the vacant apartment where defendant and Coleman had unwrapped the packages. Defendant's alleged statement that he used a key meshed with the evidence that there were no signs of forced entry into the apartment. Thus, the jury could believe that defendant's confession, together with the eyewitness identifica-

tion of Ms. Harris and her contemporaneous composite of the face of the suspect, which was introduced into evidence, was more persuasive than Davenport's earlier sighting of a different man. The jury was also well apprised of the barriers to Ms. Harris' view and could judge her credibility. (*People v. Richardson* (1988), 123 Ill. 2d 322, 353.) Janus' mentioning that Coleman confessed was only a part of his recounting of the interrogation of defendant and was used to bolster Janus' credibility of his memory and to lay the context in which defendant made his confession. Thus, although it might have been possible to avoid the reference to Coleman's confession altogether, it was not reversible error for Janus to mention under what circumstances defendant had confessed. *People v. Bainter* (1981), 102 Ill. App. 3d 1029, 1034.

■ Defendant further contends that the error was compounded because no cautionary instruction was given to the jury. However, a defendant, having permitted an error to be elicited by the prosecution without objection, as well as eliciting the same error during cross-examination, cannot claim the error was compounded when he fails to offer a limiting instruction to be given to the jury. A defendant cannot be placed in a better position for an appeal, *i.e.*, be closer to reversible error for failure to limit the prejudicial effect of an error, through his own inaction in failing to correct the error by offering a limiting instruction. Thus we must treat this cause as if the limiting instruction had been given. Moreover, had defendant raised the failure to give a limiting instruction as a separate error, the issue would have been waived for review. (*People v. Richardson*, 123 Ill. 2d at 345.) Even when analyzing the cause as if a limiting instruction had been refused, the reference to Coleman's confession did not prejudice defendant as the text of the confession, which was never revealed, did not implicate defendant. Coleman's statement was in fact cleansed of all references to the defendant. *Cf. People v. Collins* (1989), 184 Ill. App. 3d 321, 329.

■■ ■ Finally, we note that defendant's rights under the confrontation clause of the sixth amendment (U.S. Const., amend. VI) were not violated. The finder of fact cannot rely on a codefendant's uncross-examined confession, not shown to be independently reliable, as evidence against an accused, but such an error may be harmless. (*Lee v. Illinois* (1986), 476 U.S. 530, 547, 90 L. Ed. 2d 514, 530, 106 S. Ct. 2056, 2065.) The confession of a nontestifying codefendant may be inadmissible even when a defendant's own confession is introduced. (*Cruz v. New York* (1987), 481 U.S. 186, 193-94, 95 L. Ed. 2d 162, 172, 107 S. Ct. 1714, 1719.) In *Cruz*, the codefendant's confession

was devastating because it was recorded on videotape while the precise content and even the existence of the defendant's own confession were open to question. (481 U.S. at 192, 95 L. Ed. 2d at 171, 107 S. Ct. at 1718.) In the cause before the court, nothing is known of Coleman's confession because only a reference was made to it in passing. The mere reference to the confession could not have devastated defendant's defense. Since the text of the purported confession was not used as evidence against defendant, no violation of the sixth amendment arose.

For the above reasons, the judgment of the trial court of Du Page County is affirmed.

Affirmed.

GEIGER and REINHARD, JJ., concur.