THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
SIMON ARNOLD *et al.*, Defendants-Appellants.

First District (3rd Division)   Nos. 1—87—3121, 1—87—3328 cons.

Opinion filed August 14, 1991.

Michael J. Pelletier and Karen Daniel, both of State Appellate Defender's Office, of Chicago, for appellant Simon Arnold.

Randolph N. Stone, Public Defender, of Chicago (Ira Churgin, Assistant Public Defender, of counsel), for appellant Christiana Grier.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Walter P. Hehner, and Candace A. Williams, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GREIMAN delivered the opinion of the court:

Defendant Simon Arnold was convicted of armed robbery, armed violence, two counts of unlawful restraint, and was sentenced to 10 years' imprisonment. Defendant Christiana Grier was convicted of armed robbery, armed violence, unlawful restraint and was sentenced to six years' imprisonment. These convictions arose from defendants' execution of a scheme to force a currency exchange employee to give them entry to the exchange.

We affirm those convictions.

On appeal, both defendants (Arnold and Grier) urge error involving the trial judge's answer to the jury's question as to whether the charges would be different if the gun used was a toy gun. Arnold also contends his right to effective counsel was impaired because of a lawsuit he had pending at the time of trial against the public defender representing him, and Grier argues that the victims' identification of her was so indefinite that she could not have been proven guilty beyond a reasonable doubt. She further alleges she was denied a fair trial by reason of her counsel's incompetence.

On November 11, 1985, the two defendants presented bogus credentials to Julia and Landon Ward identifying themselves as police of-

ficers and told Mrs. Ward that she was wanted by the police for murder. When Mr. Ward attempted to call the police to verify the identity of the officers, Arnold threatened him with a gun and hung up the phone. After Mr. Ward was taken to the basement, handcuffed, tape placed over his eyes and his feet bound, Arnold told the couple that the reason for the defendants' intrusion was to force Mrs. Ward to gain entry to the currency exchange where she was employed.

Arnold further told Mrs. Ward that if she did not do what she was told, her husband would be blown up with dynamite. She was shown a bundle of sticks resembling dynamite with a remote control device. Mrs. Ward acquiesced and accompanied defendants in her car.

After driving past the currency exchange to find it closed, Arnold drove back to the Ward home and found the Wards' daughter Natasha had returned home. Arnold tied her up and placed her in the basement with Mr. Ward while Grier and Mrs. Ward waited in the car.

The defendants then drove Mrs. Ward back to the currency exchange where she admitted them and they took $3,690 and 22 motor vehicle city stickers. Returning Mrs. Ward to her home, defendants left in the Wards' car. Mrs. Ward found her husband and daughter still tied up and called the police.

Both defendants question the trial court's response to a question submitted by the jury during its deliberation. The trial record regarding the question is as follows:

"THE COURT: Okay, From the—Another note from the jury. 'If the gun used was a toy gun, not a real gun, is it armed violence?' I'm in a quandary how to answer this. I would think—Well, It's a hypothetical question. I think I'll just put—.

PROSECUTOR: There is no evidence it was a toy gun.

DEFENSE COUNSEL (1): Oh, no, no.

DEFENSE COUNSEL (2): I think that answers the question.

THE COURT: Yeah. Yeah, that's—I'm not going to put that down.

DEFENSE COUNSEL (2): I would just put, 'You must decide based on the instructions.'

THE COURT: This is a hypothetical question and the jury must decide the case on the evidence.

DEFENSE COUNSEL (2): I would also ask Your Honor include, 'Evidence and instructions that have been tendered to them.'

THE COURT: Okay. This is the answer. 'This is a hypothetical question. The jury must decide the case on the evidence and the instructions tendered.' "

Defendants contend that the character of the gun was a factual question for the jury, and the judge's answer that it was "a hypothetical question" forecloses the jury from considering whether the weapon was a toy gun. Defendants argue that the jury's inquiry showed that at least some of the jurors believed there was evidence it was a toy gun, and the trial judge could not usurp determination of this factual question from the jury. It is further contended that the judge's answer relieved the State of one element of its burden of proof for armed robbery and armed violence—whether there was a dangerous weapon used.

The record does not disclose a scintilla of evidence that would question the testimony identifying the weapon as a real gun. Three witnesses directly described it as such.

■■ However, we need not rule directly on whether the trial judge's characterization of the question as hypothetical decided a question of fact since we find both defendants failed to properly interpose an objection at trial and failed to adequately raise the issue in post-trial motions. Moreover, there is no plain error.

When the trial judge received the inquiry from the jury, he properly conferred with counsel for both parties, discussed an appropriate answer and accepted defense counsel's suggestions for alteration of the answer. Our courts have consistently held that a party waives an issue for appellate review if he fails to object at trial and fails to raise the issue in a post-trial motion. (*People v. Reid* (1990), 136 Ill. 2d 27, 38, 554 N.E.2d 174; *People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124; *People v. Harris* (1990), 204 Ill. App. 3d 491, 496, 561 N.E.2d 1361.) Where a defendant acquiesces to the trial court's answer to the jury's question, the defendant cannot later charge that the court abused its discretion. (*Reid*, 136 Ill. 2d at 38; *People v. Dunigan* (1981), 96 Ill. App. 3d 799, 828, 421 N.E.2d 1319.) The purpose of the waiver rule is to encourage timely objections so the trial court may promptly correct any error and to restrain a party from trying the case anew before the reviewing court. *Reid*, 136 Ill. 2d at 38.

We may consider issues on appeal where there has been no timely objection or appropriate motion in instances of plain error when the evidence is closely balanced or if the error is so grave that the accused is denied a fair and impartial trial. (*People v. Turner* (1989), 128 Ill. 2d 540, 555, 539 N.E.2d 1196; *People v. Reddick* (1988), 123

Ill. 2d 184, 526 N.E.2d 141.) We find that neither defendant can succeed under the plain error exception.

To justify a reversal for plain error, we must be convinced that the defendant was prejudiced by the error and that the outcome might have been different. A review of the cases convinces us otherwise.

Our courts have been reluctant to invoke the plain error doctrine: *People v. Reid* (1990), 136 Ill. 2d 27, 554 N.E.2d 174 (jury's question whether it could find defendant guilty of one crime and not the other was answered by direction to jury to reach a verdict based on instructions it had previously received. On following day, court declined defendant's request to answer the question differently since it believed a new answer would surprise or confuse the jury); *People v. Turner* (1989), 128 Ill. 2d 540, 539 N.E.2d 1196 (prosecutor's statement that hair possesses similar characteristics is not the same as suggesting identical identification); *People v. Womack* (1991), 216 Ill. App. 3d 540 (defendant's fifth amendment right to remain silent waived where evidence was not close); *People v. Duffie* (1990), 193 Ill. App. 3d 737, 550 N.E.2d 691 (deviation from Illinois Pattern Jury Instructions not substantially affecting defendant's rights); *People v. Bridges* (1989), 188 Ill. App. 3d 155, 544 N.E.2d 40 (improper instruction on specific intent for attempted murder erroneous, but not grave error); *People v. Lowery* (1988),177 Ill. App. 3d 639, 532 N.E.2d 414 (court's denial to jury request for grand jury proceedings and indictment not plain error where court advised the jury the indictment did not create any inference of guilt); and *People v. Smith* (1988), 165 Ill. App. 3d 603, 518 N.E.2d 1382 (failure to define term "reasonably believes" in self-defense instruction was not error where evidence was substantial against defendant).

On the other hand, the failure to instruct the jury on the State's burden of proof or on an essential element of the crime charged has been held of such grave consequence to the jury's deliberation that there need be no showing of specific prejudice or that the evidence was closely balanced. *People v. Reddick* (1988), 123 Ill. 2d 184, 526 N.E.2d 141; *People v. Allen* (1983), 116 Ill. App. 3d 996, 452 N.E.2d 636, *aff'd in part & rev'd in part on other grounds* (1985), 109 Ill. 2d 177, 486 N.E.2d 873.

In cases with closely balanced evidence, plain error has been determined: *People v. Payne* (1990), 194 Ill. App. 3d 238, 550 N.E.2d 1214 (error to amend charge at trial changing the nature of "mental state" required by the offense); and *People v. Tansil* (1985), 137 Ill. App. 3d 498, 484 N.E.2d 1169 (court refused to exercise discretion in

providing transcript for jury in erroneous belief that it had no discretion in that regard).

Defendant Grier argues that the evidence is closely balanced as to her because of what she deems to be a faulty identification and, therefore, this falls within the plain error doctrine. The evidence adduced at trial as to her identification is more than convincing and her guilt proven beyond a reasonable doubt: Mrs. Ward was able to describe Grier's height and appearance to police, and pick her out of a lineup, even noting that her hairstyle had changed. Mrs. Ward was with defendant Grier for approximately 1½ hours, which gave her adequate time to examine and recall Grier's appearance accurately. Apparently, the Grier allegations are based on the fact that she was 6½ months pregnant at the time of the robbery and that the Wards inaccurately guessed Grier's weight. However, Mrs. Ward did testify that Grier was heavy and Mr. Ward suggested that she was "a bit more than 135." Apparently, she weighed between 170 to 190 pounds at the time of her arrest.

Arnold contends the judge's failure to instruct the jury on the lesser included offense of robbery deprived him of a fair trial because the evidence at trial created a question of fact as to whether the gun was real. Arnold argues that the pattern of trickery by the defendants—the fake police identification, ersatz dynamite and phony police radio—led the jury to view the gun's authenticity as a question of fact and that the jury's question indicates it could have found him guilty of simple robbery.

However, instructions on lesser included offenses are not required in a case where the evidence rationally precludes instructions on the lesser included offense. (*People v. Castro* (1989), 190 Ill. App. 3d 227, 546 N.E.2d 662; *People v. Bryant* (1986), 113 Ill. 2d 497, 507, 499 N.E.2d 413.) In *Bryant*, the court found that the included offense instruction is proper only where "the charged greater offense requires the jury to find a disputed factual element" which is not required for conviction of the lesser included offense. *Bryant*, 113 Ill. 2d at 507.

■ We have already determined that there was no evidence to question the authenticity of the gun. All three victims testified that they saw a dark-colored steel handgun at various times during the robbery, and the record establishes that Arnold did not attempt to dispute or rebut these statements. The only reference to the authenticity of the gun was in defense counsel's closing argument. Therefore, the trial judge was correct in viewing the evidence presented as rationally precluding the finding of the lesser charge of simple robbery.

Grier also maintains her attorney was incompetent when he failed to call a witness that Grier viewed as critical in impeaching Mrs. Ward's testimony. The record indicates Mrs. Ward initially told Officer Danzl she thought the female defendant weighed 130 pounds, although Grier actually weighed between 170 and 190 pounds at the time of her arrest. Defense counsel failed to subpoena Officer Danzl, and in defendant's motion for new trial, counsel faulted the State for not calling the officer to testify and indicated that had the witness testified he would have provided a prior inconsistent statement by Mrs. Ward.

Grier contends this statement shows that counsel inaccurately believed it was the State's duty to call Officer Danzl when it was actually defense counsel's duty. Grier argues that since Mrs. Ward's identification was a key part of the case against her, defense counsel should have perfected the impeachment.

The standard for evaluating the effectiveness of counsel was first set out in *Strickland v. Washington* (1984), 466 U.S. 668, 694, 698, 80 L. Ed. 2d 674, 698, 700, 104 S. Ct. 2052, 2068, 2070, and adopted by the Illinois Supreme Court in *People v. Albanese* (1984), 104 Ill. 2d 504, 525-27, 473 N.E.2d 1246: a defendant must establish both that counsel's representation was below an objective standard of reasonableness, thus depriving defendant of a trial "whose result is reliable," and also that there is a reasonable probability that the result would have been different had there not been ineffective assistance of counsel. *People v. Flores* (1989), 128 Ill. 2d 66, 80-81, 538 N.E.2d 481.

Defendant Grier relies on an Illinois case in which defense counsel was deemed ineffective for failing to call witnesses who could testify that defendant was intoxicated; counsel misunderstood that the defense of intoxication was available as a defense to the murder charge. (*People v. Wright* (1986), 111 Ill. 2d 18, 488 N.E.2d 973.) Grier argues this case is analogous because her attorney also misunderstood that it was his duty and not the State's to call Officer Danzl as a witness.

■ Typically, the decision whether to present a given witness is a matter of trial strategy or tactics and cannot support a claim of ineffective assistance of trial counsel. (*Wright*, 111 Ill. 2d at 26; *People v. Smith* (1986), 141 Ill. App. 3d 797, 800, 491 N.E.2d 128.) However, a reviewing court must not consider counsel's decision standing alone, but rather must also evaluate whether defense counsel devised appropriate theories, given the applicable law and circumstances, and then determine if the decision was reasonable. *Wright*, 111 Ill. 2d at 27.

■ Even if Grier's charges of ineffective counsel were presumed to be true, we find she failed to establish that she is prejudiced by her

counsel's actions. The court in *Strickland* recognized that errors in a weak case are more likely to affect the outcome of a trial than errors in a case where the record evidence is overwhelming. (*Strickland*, 466 U.S. at 696, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.) We find that the outcome in Grier's case would not be different if Officer Danzl had testified as to Mrs. Ward's statement. The evidence regarding Grier's identification as the female offender is overwhelming. Consider Mrs. Ward's highly accurate identification of her after spending 1½ hours with her; both Mr. and Mrs. Ward's recollection of the offender wearing a long brown down overcoat; Grier's failure to provide any evidence that another woman borrowed her coat; and her failure to provide any evidence to support an alibi that she was shopping at the time of the robbery. The alleged discrepancy in defendant's weight, even if introduced into evidence, would certainly not be enough to dissuade a rational trier of fact from ignoring the considerable evidence against this defendant.

While we find defendant Grier has not shown the outcome is prejudiced because of counsel's actions, we also find her situation distinguishable from *Wright*. In *Wright*, there was testimony from defense counsel as to his misapprehension of the law; this facilitated the trial court's determination that under the circumstances, defense counsel's decision to omit witness testimony was not based on trial strategy or tactics. In the case at bar, we have no such testimony from Grier's counsel as to any misapprehension of the applicable law which caused counsel to decide not to call Officer Danzl to testify. From the record, we cannot tell if the reasoning behind counsel's decision is flawed. In reviewing counsel's motion for new trial, the statement at issue does not declare it is the State's duty to call the witness, nor does it convey an inference that counsel misapprehended the applicable law.

Unlike *Wright*, defendant has not developed a record to establish that counsel's representation fell below a reasonable level of competence. (*People v. Jaffe* (1986), 145 Ill. App. 3d 840, 493 N.E.2d 600.) We find counsel's performance fell within the range of competence demanded of attorneys in criminal cases.

Finally, defendant Arnold contends his sixth amendment right to counsel was violated when the trial judge denied his *pro se* motion for the appointment of trial counsel other than the public defender's office because defendant had a lawsuit pending against defense counsel and several other public defenders at the time of trial. Arnold contends the pending suit gave counsel a "personal interest" in the way he would handle the criminal trial, and the fact that they were adver-

saries in a separate action created an "inevitable tension" which could only have hampered defendant's case.

The prohibition against an attorney serving a client where there is a conflict of interest is based upon the principle that "no man can serve two masters," so if a defense attorney falls into this category, he may be hindering his client's sixth amendment right to counsel. (*People v. Spreitzer* (1988), 123 Ill. 2d 1, 13, 525 N.E.2d 30, citing *Cuyler v. Sullivan* (1980), 446 U.S. 335, 343, 64 L. Ed. 2d 333, 343, 100 S. Ct. 1708, 1715.) Effective assistance means assistance by an attorney whose allegiance to his client is not diluted by conflicting interests or inconsistent obligations. *People v. Washington* (1984), 101 Ill. 2d 104, 110, 461 N.E.2d 393; *Spreitzer*, 123 Ill. 2d at 13-14.

A trial court which is alerted to the possibility of defense counsel's conflicts of interest has a duty to inquire whether different counsel should be appointed to represent the defendant. (*Flores*, 128 Ill. 2d at 84.) In some situations, the court will determine whether a *per se* conflict of interest exists. Generally, a defendant need not demonstrate actual prejudice where there has been a *per se* conflict of interest. Reversal of a conviction under this rule does not require a showing that the attorney's actual performance was in any way affected by the purported conflict. *Spreitzer*, 123 Ill. 2d at 14-15.

*Per se* violations are often found in situations where defense counsel represents a witness in the same matter or in a related matter so that a favorable result for this defendant would inevitably conflict with the interests of another client and such facts might affect counsel's performance in ways difficult to detect or demonstrate. However, in the absence of a *per se* conflict, the defendant must bear the burden of showing actual conflict or prejudice. *Flores*, 128 Ill. 2d at 84.

The record in this case does not clearly indicate the basis of the dispute between lawyer and client.

Where defense counsel has a relationship with a person or entity (such as counsel's client, employer, or own previous commitments) which would benefit from an unfavorable verdict for the defendant, counsel will be deemed to have a *per se* conflict of interest making him ineligible to represent defendant in that matter. (*Spreitzer*, 123 Ill. 2d at 16.) In the case at bar, the fact that defendant has filed suit against the public defender representing him does not fall into this category of *per se* conflict. See *People v. Washington* (1984), 101 Ill. 2d 104, 461 N.E.2d 393 (defense attorney cannot simultaneously serve as part-time attorney for the municipality where the defendant was being prosecuted); *People v. Fife* (1979), 76 Ill. 2d 418, 392 N.E.2d

1345 (defense attorney cannot simultaneously serve as special assistant Attorney General handling unemployment compensation cases for the State on a part-time basis); *People v. Coslet* (1977), 67 Ill. 2d 127, 364 N.E.2d 67 (defense attorney cannot simultaneously serve as administrator of the victim's estate).

In *People v. Hardeman* (1990), 203 Ill. App. 3d 482, 560 N.E.2d 1198, this court considered the implications of a defendant's civil suit directed against his criminal defense attorney. There and in the case at bar, a civil suit was filed against defense counsel. The trial court, after due consideration, determined that the pending lawsuit did not create the kind of conflict that would preclude counsel from continuing to represent the defendant and satisfy his sixth amendment rights.

In *Hardeman,* the court was concerned that defendants might frustrate the administration of justice by the filing of spurious civil suits against their lawyers. The issue was further addressed in *Smith v. Lockhart* (8th Cir. 1991), 923 F.2d 1314, which acknowledged that the mere existence of a lawsuit would not "alone, constitute cause for appointment of new counsel." (*Smith,* 923 F.2d at 1321 n.11.) In *Smith,* defendant raised objection to his counsel at the earliest possible time and consistently and vigorously objected to counsel. These are not the facts in the case before us.

In the instant case, defendant objected to his counsel, by *pro se* motion, which was considered by the court on July 16, 1986, 13 months before the trial. Nothing in the record indicates that defendant and counsel failed to cooperate in the preparation and execution of the defense during the subsequent year before trial. Defendant's continued cooperation with his counsel would undermine the notion that he was deprived of effective assistance or representation in his defense. (*Carter v. Armontrout* (8th Cir. 1991), 929 F.2d 1294.) In *Carter,* under similar facts, the court observed:

"We recognize that a pending lawsuit between a defendant and his attorney may give rise to a conflict of interest requiring appointment of new counsel. [Citation.] However, a defendant who files a lawsuit against his attorney does not necessarily create such a conflict. *** After reviewing the record, we find no support, except the filing of the lawsuit, for Carter's claim." *Carter,* 929 F.2d at 1300.

In *Hardeman, Carter* and *Smith* the trial court considered the nature and gravamen of defendant's civil lawsuit filed against his counsel. In the first two cases mentioned, the respective trial courts determined that the claim was frivolous, while in *Smith* some reason-

able grounds may have existed along with defendant's persistent request to change counsel. *Smith*, 923 F.2d at 1320-21.

The record here is ambiguous as to the gist of the civil action. However, the court is clearly advised of the pendency of the action and speculates as to the kind of conflict necessary for him to appoint new counsel or make appointment from the conflicts division of the public defender's office.

Since the trial court here has not made the kind of clear statement regarding the appropriateness of the civil action as we found in the record of *Hardeman*, we have carefully examined the trial record to determine whether it establishes that the public defender thoroughly and vigorously defended the defendant and met the reasonably effective standards of assistance of counsel required in criminal cases.

A careful reading of *Flores* and *Carter* directs us to extend our inquiry to the actual nature and extent of defense provided. *Flores*, 128 Ill. 2d at 84; *Carter*, 929 F.2d at 1300.

The record establishes that the assistant public defender extensively cross-examined Julia and Natasha Ward and attempted to draw inconsistencies in their testimony for the full benefit of the defense. Their cross-examinations were in depth as to their descriptions of the male defendant's appearance, and Julia was cross-examined as to the type of gun the male defendant carried.

Seven other witnesses were exhaustively cross-examined by assistant public defender O'Hara, who incorporated defense strategy into his line of questioning. For example, in the cross-examination of Officer Baker, defense counsel made a concerted attempt to bring up potential problems in the processing of evidence by police officers and technicians, and to highlight discrepancies in Mr. Ward's report of his description of the male defendant.

Moreover, Mr. O'Hara clearly and effectively set out defense theories for the jury in his opening and closing arguments. In his 23-page closing argument, counsel was particularly vigorous in his extensive analysis of the inadequacies of the prosecution's theories and arguments. He detailed the flaws in the Wards' descriptions of the defendant, offered alternative arguments as to defendant's guilt (*i.e.*, that Arnold had been framed by the police) and argued that there was evidence of an incomplete and incompetent police investigation to help support that argument.

Counsel further effectively represented defendant at the sentencing hearing, making a thoughtful argument for mitigation, and adequately prepared defendant's motion for new trial.

Accordingly, defendant's sixth amendment right to counsel was not violated by denial of his *pro se* motion for the appointment of other trial counsel or by the absence of a vigorous defense that might have been occasioned by such a ruling.

For all the reasons set forth, the judgment of the circuit court is affirmed.

Affirmed.

CERDA, P.J., and WHITE,* J., concur.

---

*Justice White concurred with this opinion prior to his retirement.