THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT HARDEMAN, Defendant-Appellant.

First District (3rd Division)   No. 1—87—2414

Opinion filed September 19, 1990.

Michael J. Pelletier and Anna Ahronheim, both of State Appellate Defender's Office, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund and James Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Defendant, Robert Hardeman, had a bench trial and was found guilty on two counts of aggravated criminal sexual assault, and criminal sexual assault, armed robbery, armed violence and residential burglary. The trial court merged the convictions of the two aggravated criminal sexual assault counts and the criminal sexual assault count, but it entered judgments on all three counts. Defendant was sentenced to 20 years for aggravated criminal sexual assault, 10 years for armed robbery and 7 years for residential burglary, with all the terms to run concurrently. Defendant contends that (1) his conviction for aggravated criminal sexual assault must be reduced to attempt; (2) his due process right not to be tried while unfit and his right to testify in his own defense were violated; (3) the court erred in denying defense counsel's post-trial motion to withdraw; (4) his 20-year sentence should be reduced or he should be resentenced; and (5) the trial court erred in entering judgments on all three sexual assault counts for the same physical act.

We affirm the judgment of 20 years on the aggravated criminal sexual assault conviction, and affirm the judgments of 10 years on the armed robbery conviction and 7 years on the residential burglary conviction. We vacate the judgment on the one count for aggravated criminal sexual assault that was merged into the count for aggravated

criminal sexual assault that is affirmed, and we vacate the judgment on the count for criminal sexual assault.

The incident occurred on March 7, 1985. The victim lived in an apartment with her mother and two sisters. The victim was a 19-year-old student at Chicago Vocational High School. She left school at about 2:30 p.m., and boarded a bus to go home. After getting off the bus, she walked three blocks to her apartment building. The defendant, age 34, who was not known to the victim, approached her from behind and pushed her inside the vestibule of the building while holding a knife to her neck. Defendant demanded money, and she gave him $2 from her school bag. Defendant asked her if her parents were home, and when she told him that no one was home, he forced her into the vestibule by putting a knife at her throat. When the victim began crying and screaming, she was seen by her eight-year-old sister, who ran to a neighbor's apartment for help. Neither defendant nor the victim was aware that they had been seen, and defendant forced the victim into the apartment where she lived. Meanwhile, the neighbor phoned the police, and the victim's eight-year-old sister phoned her mother, who was at work.

While in the apartment, defendant forced the victim into her mother's bedroom and he took jewelry from a dresser and threw it onto the bed. He then told her to take her clothes off and lie on the bed. After she was lying nude on the bed, defendant took his penis out of his pants and inserted it into her vagina, while he held the knife at her neck. During the time that defendant had his penis in the victim's vagina, her mother entered the apartment and began screaming. Defendant then jumped up and went behind the bedroom door and closed it. The mother tried to push the door open but was not successful. The victim began yelling to her mother that defendant had a knife in his hand. After about two minutes, defendant jumped from behind the door and told the mother: "I'm going to kill you, kill you, bitch. I'm going to kill you." The mother yelled back that defendant could go but she wanted to take care of her daughter. Defendant then opened the door and ran past the mother. The mother entered the bedroom and called the police after her daughter got dressed.

A neighbor chased defendant as he was attempting to flee. Defendant stabbed the neighbor in the leg as they were going down the stairs. The victim's older sister was in the vestibule and witnessed the struggle. She ran upstairs to her apartment, grabbed a small steak knife and ran to help the neighbor. Defendant told the victim's sister to stay back or he would kill her. However, she stabbed defendant in the rump. Within 30 to 40 seconds, the police arrived and ar-

rested defendant. Defendant was taken to a hospital for medical treatment. At the hospital, the police recovered a watch from defendant that belonged to the victim. The police also recovered other jewelry and several knives from defendant.

Later, on the same day, a police officer had a conversation with the victim at the police station. In that conversation she did not state that defendant put his penis into her vagina. She told the police officer that defendant pushed her on the bed; put his finger into her vagina, and then told her to put his penis into her vagina, at which time she heard her mother calling and defendant got up.

On appeal defendant contends that his conviction for aggravated criminal sexual assault must be reduced to the crime of attempt because the victim's testimony that sexual intercourse occurred is impossible to believe considering the time frame involved, and considering the fact that during the police investigation she did not tell the police officer that the defendant put his penis in her vagina. Defendant also relies on the fact that no semen was discovered and the fact that there was no medical evidence of physical injury to the victim's vaginal area. We believe defendant's contention is without merit.

■ A person commits aggravated criminal sexual assault if the person commits criminal sexual assault and during the commission of the offense the person displayed, threatened to use, or used a dangerous weapon or any object fashioned or utilized in such a manner as to lead the victim to reasonably believe it to be a dangerous weapon. (Ill. Rev. Stat. 1987, ch. 38, par. 12—14(a)(1).) Criminal sexual assault is an act of sexual penetration by the use of force or threat of force. (Ill. Rev. Stat. 1987, ch. 38, par. 12—13(a)(1).) Sexual penetration is defined as follows: " 'Sexual penetration' means any contact, however slight, between the sex organ of one person and the sex organ, mouth or anus of another person, or any intrusion, however slight, of any part of the body of one person or of any animal or object into the sex organ or anus of another person, including but not limited to cunnilingus, fellatio or anal penetration. Evidence of emission of semen is not required to prove sexual penetration." (Ill. Rev. Stat. 1987, ch. 38, par. 12—12(f).) Thus, theoretically, if the defendant in the present case only placed his finger in the victim's vagina that act could be used to support an aggravated sexual assault conviction. However, since the State only charged that the defendant "committed an act of sexual penetration upon (the victim), to wit: sexual intercourse," defendant's conviction for aggravated criminal sexual assault in this case must be based on evidence that there was contact, however slight, between the defendant's penis and the victim's vagina. See Ill. Rev. Stat.

1987, ch. 38, par. 12—2(f) (defining sexual penetration).

Bearing in mind that defendant's conviction for aggravated sexual assault must be based on evidence that there was contact between defendant's penis and the victim's vagina, we address defendant's argument that this kind of contact could not have occurred within the time frame involved in this case. The testimony at trial demonstrates that defendant was in the victim's apartment almost one-half hour, and that the entire sequence of events with the defendant lasted perhaps 15 minutes longer. The victim testified that after defendant forced her into her mother's bedroom, he rummaged through some jewelry on top of and inside a bedroom dresser. Holding a knife to the victim, defendant then told her to take her clothes off and lie on the bed. After the victim was lying nude on the bed, defendant unzipped his pants. He took his penis out and inserted it inside the victim's vagina before he jumped up when he heard the victim's mother yelling as she entered the apartment. The victim testified that she and the defendant were in the bedroom about two or four minutes.

We believe it is clear that the defendant could have committed the acts described in the victim's testimony within the stated time and the reasonable realm of miscalculation of time that one must allow when considering the type of event that was being described. We find defendant's argument void of any merit.

Defendant also argues that the victim's testimony is impossible to believe because when she was interviewed during the police investigation, she did not tell the police officer that defendant put his penis inside her vagina. Testimony may be clear and convincing, however, even though it is impeached or contradicted. To assay testimony that is impeached or contradicted, the witness' testimony must be examined in its entirety.

Moreover, when reviewing the testimony of the victim of a sexual attack in its entirety, courts must recognize that a forced sexual encounter is an emotionally traumatizing event to a woman. Thus, the fact that a woman does not include certain facts in her statement to a police officer during the investigation of the occurrence does not mean that the victim's trial testimony which includes the omitted facts is reduced to something less than credible or that it is not clear and convincing.

Here, when we view the victim's testimony in its entirety, we conclude that under the circumstances of the occurrence to which the victim testified, her testimony that the defendant put his penis inside her vagina is credible, clear and convincing even though she had not stated that fact to the police officer during the police investigation.

We therefore reject defendant's argument.

■ Defendant also argues that the victim's testimony that defendant put his penis inside her vagina is impossible to believe because there is no physical evidence, such as the presence of semen or physical injury to the victim's vaginal area, to support that fact. However, the presence of semen is plainly not necessary to prove penetration (Ill. Rev. Stat. 1987, ch. 38, par. 12—12(f)), and medical evidence of physical injury is not necessary to prove that a woman was forced to have sexual intercourse. (*People v. Leonhardt* (1988), 173 Ill. App. 3d 314, 321-22, 527 N.E.2d 562, 567.) Defendant's argument therefore has no merit.

In sum, we conclude that the victim's testimony as to what occurred is believable, clear and convincing, and that the evidence was sufficient to prove defendant guilty beyond a reasonable doubt.

Defendant next contends that he was suffering from a sickle cell anemia crisis in the middle of the trial, and that the trial court erred in not continuing the trial. Defendant argues that therefore the trial court violated both his due process right not to be tried while unfit and his fifth amendment right to testify in his own defense. We disagree.

Defendant was arrested on March 7, 1985. On May 30, 1985, he was examined by a psychiatrist and found mentally fit for trial and legally sane at the time of the alleged offense. On January 27, 1987, he was examined by another psychiatrist and found fit for trial, able to cooperate with counsel and legally sane at the time of the offense. His case was set for trial on April 20, 1987. On that day, defendant's attorney informed the court that defendant had been suffering from acute psychiatric problems within the prior 30 to 45 days. An immediate psychiatric examination was requested to determine if defendant was fit for trial and if he was able to cooperate with counsel. On April 22, 1987, defendant was again examined by a psychiatrist and found "fit for trial" and able to cooperate with counsel. There is no indication that defendant ever informed the physician, or any of the former physicians, that he was suffering from sickle cell anemia or anything related to the disease.

The trial began on April 24, 1987. At the conclusion of the State's case on a Friday, defendant made a motion for a continuance to Monday, April 27. On Monday, defendant's attorney informed the court that defendant was not able to communicate with him. On April 30, a hearing was held and the court indicated that it had spoken to a psychiatrist at the Psychiatric Institute. A written report from a psychiatrist who had examined defendant on April 29, provides: "[D]efendant

was uncooperative during the interview, and while, in my opinion, he would be able to understand the charges and proceedings against him, it is doubtful that he would be able to cooperate with counsel; though, in my opinion, he is malingering. To satisfy any doubts in this issue, I would recommend that he be considered unfit and referred to the Department of Mental Health for further evaluation."

As a result, the court ordered another evaluation by the Department of Mental Health, and on May 21, defendant was examined by Dr. Thomas J. Tucker, a clinical psychologist with the State of Illinois. On June 8, Dr. Tucker testified as to his evaluation of defendant regarding his fitness to continue in the trial. It was Dr. Tucker's opinion that defendant had a genuine personality disturbance but that defendant's symptoms "would not preclude defendant as being found fit to stand trial in any conception of fitness," and that those symptoms "would not stand in the way of defendant's ability to testify or to work with his defense attorney." Dr. Tucker stated: "I believe that he has the ability to cooperate but seems to me unwilling to do so."

In an apparent effort to be certain of Dr. Tucker's testimony, the court asked the following:

"THE COURT: If I understand your testimony in essence you said you feel he has the ability to cooperate with counsel.

DR. TUCKER: That's correct.

THE COURT: But, he chooses not to?

DR. TUCKER: That's correct, sir."

The court then heard arguments of counsel regarding defendant's fitness to stand trial, after which the court found defendant fit to stand trial. Defense counsel then requested a continuance to bring in witnesses, which was allowed to later that afternoon.

When the court reconvened in the afternoon, defense counsel informed the court that defendant felt physically unable to testify. He stated that defendant had a sickle cell crisis on Friday which required hospitalization at Cook County Hospital and that he was not released until Sunday afternoon. When asked if that was correct, defendant replied "Yes." The court indicated that it was ready to proceed to trial and that whether the defendant wanted to testify would be up to the defendant. When asked if he wished to testify in the case, defendant replied "No." Defendant's case was then presented by way of stipulations which consisted of the medical reports describing the injuries received by defendant on the day of the occurrence.

On appeal, defendant cites medical literature describing sickle cell anemia and the graveness of the disease. However, there is nothing to demonstrate or suggest that there were special orders given to

defendant by the treating physicians upon his release from the hospital regarding either a physical or mental inability to testify or stand trial. Nor is there anything to demonstrate or suggest that he was under any incapacitating medication that would create a physical or mental inability to testify or stand trial. It can be rightfully assumed that defendant was physically and mentally fit to testify and stand trial if he was discharged from the hospital without any suggestion that he was under some special medical order or incapacitating medication. Also, the court observed that "based on testimony of the psychologist, Dr. Tucker, that Mr. Hardeman is fit as far as his mental process to cooperate with counsel."

■ Under the circumstances, we conclude that the record sufficiently establishes that defendant was fit for trial and there was no abuse of discretion by the trial court in the manner in which it proceeded with the trial, and that there is no merit to defendant's contention that his due process or fifth amendment rights were violated.

Defendant next contends that this case must be remanded for new post-trial proceedings because the trial court erred in denying defense counsel's post-trial motion to withdraw on the basis of a conflict of interest. We find no merit to this contention.

On the day set for post-trial motions and sentencing, defense counsel told the court that he had been served that morning with a civil lawsuit filed against him by the defendant in the present case. The civil suit alleged that defense counsel in the present case conspired with the court and the prosecution to deny the defendant his constitutional rights, and it charged attorney malpractice. Defense counsel told the court that the allegations and charges were untrue, libelous and defamatory. However, he moved to withdraw from the present case because of the civil suit, on the basis that a conflict of interest existed. The court denied the motion. In denying the motion the court stated: "I have read this complaint for attorney malpractice. I'm familiar with your (defense counsel) activity in the case. And in my opinion it's a frivolous lawsuit." The court also stated that defense counsel had conducted himself professionally and in a very highly competent manner.

■ Inherent in a trial judge's authority to conduct and preside over a criminal trial is the discretion to conclude that a defendant's conduct or pursuit of an otherwise legal right is frivolous and merely an attempt to frustrate the administration of justice. If the trial judge did not have such discretion, you would have an intolerable anomaly in that the defendant could whimsically control the progression of the proceedings over which the judge is presiding. The trial judge's dis-

cretion in such situations, of course, is subject to review, but the trial judge must be assured that he is not hamstrung and that he may exercise the discretion.

Here, we believe that the trial judge had the discretion to find that for purposes of the present case the civil suit was frivolous and was utilized merely as an attempt to frustrate the administration of justice in his courtroom. The trial judge exercised that discretion in denying the motion to withdraw.

■■ Upon review of the discretion exercised by the trial judge, based on the history of this case and the circumstances that existed at the time the motion to withdraw was presented, and the fact that the record clearly shows that for purposes of this case the trial judge made a reasonable assessment of the allegations in the civil suit, we believe that the trial judge did not abuse his discretion in denying the motion to withdraw. The trial judge acted properly and within his discretion in denying the motion.

Defendant next contends that his 20-year sentence for aggravated criminal sexual assault was improperly based on factors inherent in the offense and that the sentence should be reduced or the case remanded for resentencing. We disagree.

Aggravated criminal sexual assault is a Class X felony, with a sentence of not less than six years and not more than 30 years. Defendant received a 20-year sentence, which is within the statutory bounds. Prior to sentencing, the State presented evidence in aggravation in the posture of a complaining witness in another criminal case that is pending against defendant. The witness testified that defendant forced his way into her apartment, armed with a revolver, and told her that he was going to rape, rob and kill her. She testified that defendant sexually assaulted her and took some of her personal property before fleeing. Defendant testified and contradicted the testimony of the complaining witness. Whereupon, the trial court stated that "there is sufficient contradiction in the testimony so that I'm not considering it with respect to aggravation." In mitigation, the court considered the lack of any other criminal background.

In meting out defendant's sentence, the court stated: "I do consider as a very serious aggravating factor the fact that he forcibly at knife point made this little girl with a speech disability go into her own home and then proceeded to have her disrobe and commit a crime of aggravated criminal sexual assault on her. And had not her sister come along there well might have been other more serious injuries involved."

■■ ■ Defendant argues that the trial court's statement with re-

spect to aggravation demonstrates that the only aggravating factors that the trial court relied upon are inherent in the offense itself and that therefore the sentence is improper. (*People v. Conover* (1981), 84 Ill. 2d 400, 419 N.E.2d 906.) We disagree with defendant's premise because there are wide variances in the risk of harm to victims of sexual attacks, and the context of the trial court's statement demonstrates that the trial court considered in aggravation the degree of the "threatened serious harm" to the victim, which is a proper factor to consider in aggravation. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(1).) Moreover, in determining whether a sentence was improperly imposed, a reviewing court should not focus on a few words or statements of the trial court, but, rather, the determination of whether or not the sentence was improper must be made by considering the entire record as a whole. (*People v. Fenderson* (1987), 157 Ill. App. 3d 537, 549, 510 N.E.2d 479, 487.) After reviewing the entire record as a whole, we do not believe that the defendant's sentence of 20 years for his conviction of aggravated criminal sexual assault was improper.

■■■ The remaining contention by defendant is not disputed. The trial court merged the convictions of the criminal sexual assault count (count I) and the two aggravated criminal sexual assault counts (counts II and IX), but it entered judgments on all three counts. The State agrees with defendant that the trial court erred in entering judgments on all three sexual assault counts for the same physical act. (*People v. King* (1977), 66 Ill. 2d 551, 562, 363 N.E.2d 838; *People v. Wilson* (1981), 93 Ill. App. 3d 395, 396, 417 N.E.2d 146.) The judgments on count I for criminal sexual assault and count IX for aggravated criminal sexual assault shall therefore be vacated.

Accordingly, the judgments on count II for aggravated criminal sexual assault, on count X for residential burglary, on count XIX for armed robbery, and on count XXV for armed violence are affirmed. The judgments on count I for criminal sexual assault and count IX for aggravated criminal sexual assault are vacated.

Affirmed in part; vacated in part.

CERDA, P.J., and FREEMAN, J., concur.