June 19, 1998

NO. 5-96-0543

IN THE 

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS,)  Appeal from the

                                    )  Circuit Court of

     Plaintiff-Appellee,            )  St. Clair County.

                                    )

v.                                  )  No. 93-CF-1262

                                    )

RONALD D. CORDEVANT,                )  Honorable

                                    )  Lloyd A. Cueto,

     Defendant-Appellant.           )  Judge, presiding.

_________________________________________________________________

JUSTICE HOPKINS delivered the opinion of the court:

Defendant, Ronald Cordevant, appeals from his conviction, following a jury trial, of first-degree murder (720 ILCS 5/9-1(a) (West 1992)).  Defendant was sentenced to 53 years' imprisonment.  On appeal, defendant contends that the trial court erred in failing to appoint other counsel to represent defendant with respect to his posttrial allegation that his attorney suborned perjury and in failing to sufficiently examine the factual basis for defendant's other 
pro se
 posttrial claims.  We affirm.

FACTS

Defendant was charged by indictment with the murder of his wife, Mary Dawn Cordevant.  Prior to trial, a jury found defendant fit to stand trial.  During the fitness hearing, Dr. John Rabun, the State's physician expert, testified that even though defendant was not taking Thorazine at the time of the hearing, defendant would remain fit to stand trial even if defendant began taking Thorazine.  Dr. Rabun explained that people are often placed on medication that is not needed and that he had restored people to stand trial using such medication.   

After defendant was found fit to stand trial, he filed a 
pro se
 motion for appointment of counsel other than the public defender who had been representing him.  The court appointed special counsel to represent defendant with respect to his 
pro se
 motion.  Following a hearing, defendant's motion was denied.  The public defender continued to represent defendant.

At trial, eight eyewitnesses to the shooting testified on behalf of the State, in addition to two police officers, a crime-scene technician, a firearms examiner, a forensic pathologist, and the victim's mother.  The testimony revealed that on December 20, 1993, at Rally's restaurant in Cahokia, defendant and Mary Cordevant were arguing in defendant's truck, and this argument was overheard on Rally's drive-through intercom.  Gary Francis, Gary Donnelley, and Shanda Robertson, employees of Rally's restaurant, testified that they heard Mary yell:  "Don't.  You don't have to do it.  Don't do it.  Don't, don't."  They heard defendant say, "Shut up."  Mary jumped out of the truck and began running.  Defendant, with a gun in his hand, chased Mary and shot at her.  Mary staggered but kept running.  Defendant caught her, picked her up by the collar, and shot her again.  Mary attempted to brush the gun away.  Defendant then aimed the gun at Mary's head and fired.    

Thereafter, defendant fled the scene in his truck.  Charles  Aligholi, an employee of Rally's, testified that he wrote down the perpetrator's license plate, which was later identified as being registered to defendant.  

Against the advice of his counsel, defendant testified that he did not shoot his wife and that, instead, her death was an accident.  Defendant stated that he and his wife were having a discussion outside Rally's, concerning whether Mary should go to her mother's or not, when Mary left defendant's truck.  Defendant said that he followed Mary and caught her.  Defendant stated that when Mary turned to him, she had a gun in her hand, and the gun discharged as he pushed it back to her.  Defendant asserted that the gun discharged again as Mary fell and as defendant attempted to seize the gun away from her.  Defendant stated he fled the scene in his truck and disposed of the gun on a back road.  The gun was never recovered. 

Dr. Raj Nanduri, a forensic pathologist who performed the autopsy on Mary's body, found six gunshot wounds, two of which were exit wounds.  The cause of Mary Dawn Cordevant's death was a gunshot wound that penetrated her skull. 

The jury found defendant guilty of first-degree murder.  Defendant's attorney filed a posttrial motion, and defendant filed his 
pro se
 posttrial motion.  Among other contentions, defendant alleged that his trial attorney had been ineffective at trial because (1) counsel suborned perjury from defendant and (2) counsel failed to seek a mistrial when a young girl, within view of the jury, requested that the prosecutor point out the "bad man" and the prosecutor pointed at defendant. 

Prior to sentencing, the trial court noted that it had reviewed counsel's and defendant's posttrial motions.  Defense counsel indicated that arguing defendant's 
pro se
 motion could create a conflict of interest for him.  In addition, counsel declined the court's offer to present oral argument with respect to his own motion.  Similarly, defendant declined the court's request to supplement his written motion with any oral statement.  No evidence in mitigation was presented by defense counsel.  The court denied all posttrial motions, and defendant was thereafter sentenced to imprisonment for 53 years.  

Trial counsel filed a motion to reduce sentence, and defendant filed a 
pro se
 motion to reduce sentence.  In his 
pro se
 postsentencing motion, defendant alleged that his attorney failed to present mitigating evidence at the sentencing hearing.  Specifically, defendant alleged that defendant's family and friends were not called to testify on defendant's behalf.  Defendant also alleged that he was unfit to stand trial because the county jail was giving him Thorazine, a psychotropic drug, during trial and sentencing.  Defendant alleged that his trial attorney had been ineffective for failing to inform the court and the psychologist who testified for defendant at his fitness hearing that defendant was taking Thorazine.

At the postsentencing motion hearing, defense counsel noted that since the sentencing hearing, defendant had attempted suicide and that counsel had learned that defendant was taking psychotropic medication.  No explanation appears in the record for the source of counsel's knowledge that defendant was taking psychotropic medication.  Counsel indicated, however, that he never had a 
bona fide
 doubt concerning defendant's fitness.  Although the trial court requested that defendant make an oral statement in support of the motion, defendant declined to do so.  The trial court denied counsel's and defendant's postsentencing motions.

DISCUSSION

APPOINTMENT OF NEW COUNSEL

Conflict-of-Interest Analysis

Initially, defendant contends the trial court erred when it failed to appoint new counsel to represent him once he alleged that his attorney suborned perjury.  Defendant argues that as a result of his subornation-of-perjury allegation, trial counsel labored under a 
conflict of interest and that, therefore, the trial court should have appointed new counsel to argue the posttrial motions.  Defendant asks this court to vacate his sentence and remand the cause for posttrial proceedings with directions that new counsel be appointed.  We decline to do so.

Defendant's posttrial allegations of ineffective assistance of counsel do not automatically require the appointment of new counsel.  See 
People v. Williams
, 147 Ill. 2d 173, 251 (1991).  The sixth amendment right to the effective assistance of counsel includes a right to conflict-free counsel.  
Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984).  A conflict of interest, however, is not created simply because defendant claims that his representation was ineffective.  
People v. Cook
, 279 Ill. App. 3d 718, 724 (1995).  

Defendant alleged in his posttrial motion that counsel suborned perjury.  Defendant cites 
People v. Brown
, 40 Ill. App. 3d 562 (1976), for the proposition that an attorney may not represent a defendant at posttrial proceedings where the defendant has accused his attorney of suborning perjury.  In 
Brown
, prior to the  sentencing hearing, the defendant alleged that his attorney conditioned his representation of the defendant on the defendant testifying falsely.  
Brown
, 40 Ill. App. 3d at 563.  At the sentencing hearing, the court requested the State's Attorney to investigate the matter.  
Brown
, 40 Ill. App. 3d at 563.  Defense counsel denied the accusation and stated that he felt he should withdraw.  
Brown
, 40 Ill. App. 3d at 563.  In response to the trial court's inquiry, however, defense counsel stated he was willing to represent the defendant at the sentencing hearing, and the defendant stated he was willing to be represented by this attorney because "sentencing is sentencing."  
Brown
, 40 Ill. App. 3d at 563.

The court in 
Brown
 held that once the defendant made this accusation known to the court and the attorney and once the court requested an investigation into the validity of the charge, the attorney labored under an obvious and inherent conflict.  
Brown
, 40 Ill. App. 3d at 564.  The court stated:

"Here, the conflict is readily apparent.  Counsel, having been accused of subornation of perjury, was placed in the awkward position of defending himself and denying the validity of defendant's accusation while urging the court to consider defendant's good moral character in an attempt to obtain probation or leniency."  
Brown
, 40 Ill. App. 3d at 564.

The court held that even though a dissatisfied client may falsely accuse his attorney, the conflict arose because of the duplicitous position counsel was placed in before the sentencing hearing.  
Brown
, 40 Ill. App. 3d at 564.

In the present case, counsel was not placed in the same duplicitous position as in 
Brown
.  Trial counsel was not in the awkward position of defending himself and denying the validity of defendant's accusations while urging the court to consider defendant's good moral character and honesty in an attempt to obtain leniency.  Unlike 
Brown
, no formal complaint or investigation was underway concerning defendant's allegations.  Trial counsel was not requested to respond to defendant's allegations, and counsel was not obligated to attack defendant's truth-telling ability to protect himself.  

Similarly, subsequent Illinois case law, while not involving subornation-of-perjury allegations, nevertheless offers instruction concerning defendant's allegation that trial counsel labored under a conflict of interest.  Illinois cases have consistently found no conflict of interest even where the defendant filed an Attorney Registration and Disciplinary Committee (ARDC) complaint or a lawsuit against defense counsel.  Instead, the Illinois Supreme Court has held that it is within the judge's discretion to avoid a defendant's attempt to delay or impede the effective administration of justice.  See 
People v. Barrow
, 133 Ill. 2d 226, 252 (1989);
  see also 
People v. Massa
, 271 Ill. App. 3d 75, 82-83 (1995) (a lawsuit or ARDC claim against a defendant's attorney does not create a 
per se
 conflict, but it is the defendant's responsibility to provide the court with legitimate reasons supporting his request for new counsel); 
People v. Gardner
, 47 Ill. App. 3d 529, 534 (1977) (it is within the trial court's discretion whether to appoint another attorney for, if not, defendants would be encouraged to file frivolous motions and avoid cooperating with their court-appointed counsel).   

Inherent in a trial judge's authority to preside over a criminal trial is the discretion to conclude that a defendant's pursuit of an otherwise legal right is frivolous and is merely an attempt to frustrate the administration of justice.  See 
People v. Hardeman
, 203 Ill. App. 3d 482 (1990).  Here, defendant made previous attempts to replace the public defender with outside counsel.  The trial court had the discretion to determine that defendant's posttrial and postsentencing allegations, made  for the purpose of obtaining new counsel, were frivolous and were intended to delay the effective administrative of justice.

Furthermore, the present case is less persuasive than the previously mentioned cases because here no ARDC complaint or civil lawsuit was pending against counsel.  A conflict of interest certainly did not arise merely because defendant alleged subornation of perjury in his 
pro se
 motion.  The trial court was correct in rejecting the automatic appointment of new counsel to argue defendant's 
pro se
 allegations of the ineffective assistance of counsel, including subornation of perjury, under a conflict-of-interest analysis.    

Defendant's Underlying Allegations of Ineffective Assistance

Defendant suggests that when the ineffective assistance of counsel is alleged, some automatic requirement to appoint new counsel exists.  This is not the law.  If in the sound discretion of the trial court the allegation lacks merit or involves matters of trial strategy, the appointment of new counsel is not required and the 
pro se
 motion may be denied.  
People v. Robinson
, 157 Ill. 2d 68 (1993).  New counsel should be appointed only if the defendant's allegation of the ineffective assistance of counsel shows the possible neglect of the case.  
Robinson
, 157 Ill. 2d at 86.  In 
People v. Woodson
, 220 Ill. App. 3d 865, 877 (1991), the court explained:

"[I]t is not necessary to appoint new counsel where a trial judge finds the claim to be spurious[,] and such a finding will not be overturned on appeal unless the finding is manifestly erroneous."  

Thus, we now turn to the merits of defendant's ineffectiveness argument.  Before this court, defendant alleges that four instances of incompetence require a reversal and a remand with the  appointment of new counsel.  Defendant argues that trial counsel (1) suborned perjury, (2) failed to present mitigating evidence at sentencing, (3) failed to move for a mistrial when the prosecutor  pointed out defendant as "the bad man" in view of the jury, and (4) failed to inform the court and defendant's fitness-hearing medical expert that defendant was taking Thorazine, a psychotropic drug, during trial and sentencing.  Because the matters complained of clearly lack merit or simply involve questions of trial strategy, we conclude that the trial judge did not err in failing to appoint new counsel to represent defendant.

First, the record refutes defendant's allegation of suborned perjury.  Defendant's testimony, that Mary's death was an accident and that Mary had the gun in her hand as it discharged when defendant grabbed her, mirrored his statements after his arrest before his trial attorney was involved.  Second, trial counsel went on record to state that defendant was testifying against his advice.  The trial court asked defendant if he wanted to testify against his lawyer's advice, and defendant answered in the affirmative.  Clearly, defense counsel did not coerce defendant into testifying falsely.  Defendant's allegation of subornation of perjury lacks merit.  

Next, defendant contended in his 
pro se
 posttrial motion that his attorney was ineffective for failing to move for a mistrial when the prosecutor, in response to a young girl's question in front of the jury, identified defendant as the "bad man."  However, we find that defendant has failed to overcome the strong presumption that defense counsel's action constituted sound trial strategy.  A motion for a mistrial would have further highlighted the event; defense counsel's failure to move for a mistrial was a strategic decision.  An attorney's decisions regarding trial tactics or strategy are matters of professional judgment, to which a review of a counsel's competency does not extend.  See 
Strickland
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.  

In addition, the prosecutor's affirmative answer that defendant was a "bad man" is harmless.  Such a statement does not rise to the level of prejudicing the defendant so that the result of the proceeding becomes unreliable.  See 
Strickland
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.  In the present case, defendant was seen running after and repeatedly shooting his wife by numerous, disinterested witnesses.  Defendant himself testified that he and his wife were arguing and that after the shooting he fled the scene and disposed of the gun.  The jury's finding of guilt did not rest on counsel's failure to move for a mistrial.  Thus, the trial court correctly found no ineffectiveness on the part of trial counsel and properly denied defendant's 
pro se
 motion without appointing new counsel.

Next, defendant, in his 
pro se
 postsentencing motion, faulted trial counsel for failing to pursue mitigating evidence.  Citing 
People v. Thompkins
, 161 Ill. 2d 148 (1994), defendant contended that his attorney's failure to investigate and present mitigating evidence at sentencing constituted the ineffective assistance of counsel.  In 
Thompkins
, the court held that a "judge or jury in a capital case may not refuse to consider, or be prevented from considering, relevant mitigating evidence offered by the defense." 
Thompkins
, 161 Ill. 2d at 167.  The 
Thompkins
 court noted that the mitigating evidence proposed by the defendant would have complimented counsel's sentencing-hearing strategy, which was to show that the defendant's role in the offenses was subject to doubt and did not justify sentencing the defendant to death.  
Thompkins
, 161 Ill. 2d at 167.

In 
People v. Tenner
, another capital case, the court nevertheless distinguished 
Thompkins
, noting that counsel did not ignore or fail to introduce a substantial amount of mitigation evidence.  
People v. Tenner
, 175 Ill. 2d 372, 384 (1997).  The court held that defense counsel employed a coherent strategy at the sentencing hearing and was not ineffective in failing to take the course suggested by the defendant, which was to obtain a mental evaluation of the defendant and offer the evidence in mitigation.  
Tenner
, 175 Ill. 2d at 383-84; see also 
People v. Towns
, 174 Ill. 2d 453 (1996) (the supreme court found that the defendant's allegation that his attorney was ineffective for failing to present additional mitigation evidence was correctly held to be without merit because the defendant failed to offer any explanation revealing the character of the mitigating evidence or how it would have changed the outcome).

Decisions whether to call witnesses for the defense are generally matters of trial strategy and are beyond the scope of review.  
People v. Kidd
, 175 Ill. 2d 1, 45 (1996).  In the case at bar, defendant's contentions failed to demonstrate counsel's neglect or concerned counsel's decisions that were well within the bounds of proper trial strategy. 

Unlike the cases relied on by defendant, defendant herein was not subjected to a capital sentencing hearing.  Similar to 
Tenner
, however, defendant's attorney employed a coherent strategy at the sentencing hearing, noting 7 of 13 mitigating factors applicable in defendant's case.  Although defendant claims that his family and friends should have been called to testify, he does not characterize the testimony or explain how it would have changed the outcome of the hearing.  Instead, defendant declined to comment or elaborate on his allegations, though he was given the opportunity to do so by the trial court.  Accordingly, we cannot conclude that defendant's counsel was ineffective for failing to present this alleged mitigating evidence, and defendant's 
pro se
 motion was properly denied without appointing new counsel.    

Finally, defendant contended, in his 
pro se
 postsentencing motion, that trial counsel was ineffective in failing to inform the court or defendant's fitness-hearing expert that defendant was taking Thorazine during trial and sentencing and was unable to understand the proceedings.  Defendant asks that we remand the cause to the circuit court so that additional information may be presented about medications defendant might have been receiving at the time of trial.  We decline to do so.  

The due process clause of the fourteenth amendment prohibits the prosecution of a person who is unfit to stand trial.  
Medina v. California
, 505 U.S. 437, 440, 120 L. Ed. 2d 353, 359, 112 S. Ct. 2572, 2574 (1992).  To protect this due process requirement, Illinois statutory law and case law require the trial court to hold a fitness hearing if there is a 
bona fide
 doubt concerning a defendant's mental fitness to understand the nature and purpose of the proceedings and to assist in his or her defense.  725 ILCS 5/104-10 (West 1992).  

At the time of defendant's trial, the law provided that defendants receiving psychotropic medication were entitled to a fitness hearing.  725 ILCS 5/104-21(a) (West 1994); see also 725 ILCS 5/104-21(a) (West Supp. 1995) (which was found unconstitutional in 
Johnson v. Edgar
, 176 Ill. 2d 499, 523 (1997), and therefore was void 
ab initio
).  Thereafter, the statute was amended to eliminate automatic fitness hearings for defendants receiving psychotropic medication.  Pub. Act 89-689, §90, effective December 31, 1996.  The amended statute provides:  "A defendant who is receiving psychotropic drugs shall not be presumed to be unfit to stand trial solely by virtue of the receipt of those drugs or medications."  725 ILCS 5/104-21(a) (West 1996).  

Defendant cites 
People v. Kinkead
, 168 Ill. 2d 394 (1995), alleging that the law requires a fitness hearing for persons tried and sentenced while taking psychotropic medication and that defendant's attorney was ineffective for failing to inform the court and defendant's fitness-hearing expert that defendant was taking such medication.  In 
Kinkead
, the record established that the defendant was being treated with the antipsychotic drug Thorazine while in jail awaiting trial.  
Kinkead
, 168 Ill. 2d at 406.  The Illinois Supreme Court could not determine if the administration of Thorazine was proximate enough to Kinkead's guilty plea and sentencing to trigger the right to a fitness hearing pursuant to section 104-21(a).  
Kinkead
, 168 Ill. 2d at 415.  The matter was remanded for a clarification of the circumstances surrounding defendant's use of psychotropic medications.  
Kinkead
, 168 Ill. 2d at 415.  Our supreme court recently rendered an opinion after the remand.  
People v. Kinkead
, No. 75236 (Ill. May 21, 1998).

In this case defendant's assertion regarding the application of 
Kinkead
 is unpersuasive.  As a threshold issue, defendant in the case 
sub judice
 received a jury trial to determine fitness.  Further, defendant's argument fails because he has not offered one kernel of evidence showing the actual ingestion of Thorazine.  Unlike 
Kinkead
, the record in the case 
sub judice
 fails to establish that defendant was taking any antipsychotic drug.  Defendant asserted for the first time in his 
pro se
 postsentencing motion that he was taking Thorazine during trial and sentencing and that it was prescribed by the medical staff of the St. Clair County Jail.  However, defendant failed to name, or even describe, the physician prescribing the Thorazine, the staff members dispersing it to him daily, or the pharmacy distributing the Thorazine to him.  Defendant did not request the trial court to subpoena any link of this Thorazine distribution chain.  Defendant's attorney, at defendant's postsentencing motion hearing, asserted that it had been brought to his attention that defendant was taking psychotropic medication.  Yet absent from the record is any evidence that defendant's ingestion of Thorazine was brought to counsel's attention by someone other than defendant.  In fact, defendant's presentence investigation report recited that defendant stated he was not being treated for a physical illness or condition at the time and believed his health to be good.  By virtue of having failed to provide any information to suggest that defendant actually ingested Thorazine, defendant has necessarily failed to establish his entitlement to a second fitness hearing under section 104-21(a).  See 
Kinkead
, 168 Ill. 2d at 411 (the court noted that "no hearing is required where the defendant's right to a fitness hearing pursuant to section 104-21(a) is not established, as where there is no indication that defendant was being treated with psychotropic medication during the relevant times, and the trial court has not otherwise abused its discretion in concluding that no 
bona fide
 doubt of unfitness is present"). 

The information available to the trial judge indicated that defendant remained fit to stand trial, and trial counsel did not neglect defendant's case by failing to request a second fitness hearing or by failing to notify the court or the expert of defendant's medical information.  Because defendant was previously found fit to stand trial, he is presumed to remain fit, unless shown otherwise.  See 
People v. Sanders
, 61 Ill. App. 3d 566 (1978).  Defendant's trial counsel stated at the postsentencing hearing that he had no 
bona fide
 doubt as to defendant's fitness to stand trial.  At the pretrial fitness hearing, Dr. John Rabun testified that defendant would remain fit to stand trial even if medicated by Thorazine.  Defendant's testimony was coherent, as were his various 
pro se
 motions.  Defendant demonstrated to the trial court that he was mentally fit to understand the nature and purpose of the proceedings and to assist in his defense.  We refuse to remand this cause for the trial court to appoint new counsel or conduct further investigation into defendant's claims.  

FACTUAL INQUIRY

In the alternative, defendant contends the trial court failed to sufficiently examine the factual basis for defendant's ineffective-assistance-of-counsel claims.  As a result, defendant asks this court to remand this cause so that the circuit court may conduct the required preliminary inquiry into defendant's claims that his attorney was ineffective.  After conducting such an inquiry, defendant requests the court to appoint new counsel if the trial court finds merit in defendant's allegations.  Defendant cites the supreme court decisions in 
People v. Nitz
, 143 Ill. 2d 82 (1991), and 
People v. Robinson
, 157 Ill. 2d 68 (1993), to allege that his case must be remanded for further posttrial proceedings due to the trial court's failure to adequately inquire into defendant's 
pro se
 posttrial and postsentencing motions alleging the ineffective assistance of counsel.  

In 
Nitz
, the supreme court held that the trial court should conduct a preliminary inquiry into a defendant's allegations of the ineffective assistance of counsel to determine whether the claim lacks merit or pertains only to trial tactics, and if so, then no new counsel need be appointed.  
Nitz
, 143 Ill. 2d at 134.  

In 
Robinson
, the supreme court held that the trial court must examine the factual matters underlying a defendant's claim.  Although the defendant's claims may be without merit, the trial court should afford the defendant the opportunity to specify and support his complaints.  
Robinson
, 157 Ill. 2d at 86.   

Since 
Nitz
 and 
Robinson
, appellate courts have generally held that there should be some interchange or investigation by the trial court into the underlying factual basis, if any, of the allegations of ineffectiveness before a defendant's claim may be dismissed.  
People v. Baltimore
, 292 Ill. App. 3d 159, 164-65 (1997); 
People v. Parsons
, 222 Ill. App. 3d 823, 830 (1991).   

The defendant in 
People v. Munson
 asserted that the trial court was required to make a "preliminary investigation" of his ineffectiveness claim and that, in failing to do so, the court erred and the cause should have been remanded for the appointment of new counsel and a hearing.  
People v. Munson
, 171 Ill. 2d 158, 199 (1996).  The Illinois Supreme Court rejected the defendant's contention, stating that the trial court made every effort to ascertain the nature and substance of the defendant's ineffectiveness claim because the defendant had been given two opportunities to offer substance to his ineffectiveness claims but he provided no facts from which the court could infer a basis in support of his claim.  
Munson
, 171 Ill. 2d at 201.  The  supreme court concluded that the trial court committed no error in declining to appoint new counsel to represent the defendant on his 
pro se
 motion, and the court rejected the defendant's notion that the cause should be remanded because the trial court failed to make a "preliminary investigation" of his ineffectiveness claim.  
Munson
, 171 Ill. 2d at 201; see also 
People v. Stokes
, 281 Ill. App. 3d 972, 980 (1996) (the defendant was sufficiently sophisticated to have addressed the trial court concerning his claim of the ineffective assistance of counsel, but he failed to do so, and under such circumstances the trial court did not commit manifest error when it did not further inquire into defense counsel's conduct during the trial); see also 
People v. Johnson
, 227 Ill. App. 3d 800, 809 (1992) (the trial court must thwart transparent and manipulative tactics of the defendant while ensuring there is good cause for the defendant's complaints about counsel).

Unlike 
Robinson
 and 
Nitz
, the trial court in the case 
sub judice
 offered defendant the opportunity to specify and support his complaints at the hearings on his posttrial motion and postsentencing motion, but defendant chose to refrain from argument.  Similar to 
Munson
, the trial court made every effort to ascertain the nature and substance of defendant's ineffectiveness claim.  Yet defendant provided no facts from which the court could infer a basis in support of such claim.  In addition, defendant demonstrated his sophistication through his numerous 
pro se
 motions.  Thus, as in 
Stokes
, defendant was sophisticated enough to have addressed the trial court concerning his claims of the ineffective assistance of counsel, but he nevertheless failed to do so.  The trial court did not commit manifest error when it did not make any further inquiry into defense counsel's conduct during the trial. 

We conclude that defendant's posttrial allegations of the ineffective assistance of counsel either were meritless or concerned matters of trial strategy.  The trial court did not neglect to provide defendant with an opportunity to argue his allegations.  Without some specification by defendant to give the trial court a gist of the claim, we refuse to determine that the trial court was required to make any further inquiry.

For the foregoing reasons, defendant's conviction is affirmed.

Affirmed.

WELCH, P.J., and CHAPMAN, J., concur.

                                       NO. 5-96-0543

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS,)  Appeal from the

                                    )  Circuit Court of

     Plaintiff-Appellee,            )  St. Clair County.

                                    )

v.                                  )  No. 93-CF-1262

                                    )

RONALD D. CORDEVANT,                )  Honorable

                                    )  Lloyd A. Cueto,

     Defendant-Appellant.           )  Judge, presiding.

___________________________________________________________________________

Opinion Filed
: June 19, 1998

___________________________________________________________________________

Justices
: Honorable Terrence J. Hopkins, J.

Honorable Thomas M. Welch, P.J.

Honorable Charles W. Chapman, J.

Concur

___________________________________________________________________________

Attorneys
 Robert Agostinelli, Deputy Defender, Peter A. Carusona,

for
 Assistant Defender, Office of the State Appellate Defender,

Appellant
 Third Judicial District, 1100 Columbus Street, Ottawa, IL

61350

___________________________________________________________________________

Attorneys
 Hon. Robert Haida, State's Attorney, St. Clair County, 

for
 10 Public Square, Belleville, IL  62220

Appellee
 

Norbert J. Goetten, Director, Stephen E. Norris, Deputy Director, Kevin Sweeney, Staff Attorney, Office of the State's Attorneys Appellate Prosecutor, Route 15 East, P.O. Box 2249, Mt. Vernon, IL  62864

___________________________________________________________________________