7 October 1999

 

 No. 3--98--0829

_________________________________________________________________

 IN THE

 APPELLATE COURT OF ILLINOIS

 THIRD DISTRICT

 A.D., 1999

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of the 9th Judicial Circuit,

 ) Knox County, Illinois

Plaintiff-Appellee, ) 

 )

v. ) No. 98--CF--108

 ) 

CHAD A. JACOBS, ) Honorable

                                ) James B. Stewart

Defendant-Appellant. ) Judge, Presiding

_________________________________________________________________

PRESIDING JUSTICE HOLDRIDGE delivered the Opinion of the court:

_________________________________________________________________

Defendant, Chad A. Jacobs, appeals an order from the Circuit Court of Knox County adjudging him guilty of criminal damage to property (720 ILCS 5/21--1(1)(a) (West 1998)).  He claims that the trial judge should have appointed a new attorney to represent him on two occasions: (1) during the hearing on his motion for a new trial when he alleged that his attorney had rendered ineffective assistance of counsel; and (2) during his sentencing hearing when he alleged that his attorney had instructed him to lie while testifying at trial.  We affirm the circuit court’s judgment.

FACTS

Defendant was charged with the offense of criminal damage to property (720 ILCS 5/21--1(1)(a) (West 1998)) belonging to a municipal golf course in Galesburg.  The circuit court appointed public defender James Harrell to represent him.  He made his initial court appearances, and waived his right to a jury trial, before Judge Stephen Evans.  The circuit court subsequently assigned his case to Judge James Stewart for a bench trial.  Assistant Public Defender Melidis appeared with defendant on the trial date and obtained a continuance.  Harrell then appeared with defendant on the continuance date and Judge Stewart conducted a bench trial that day.

I. Trial

Officer Terry Boynton testified that on February 19, 1998, he discovered two golf carts in a gully while patrolling the Lake Storey area of Galesburg.  He noticed a whiskey bottle in the first cart and a portable stereo playing music in the second cart.  The second cart also had a bicycle hooked to its rear bars where golf bags are normally attached.  The cart was on a narrow bridge and the bicycle was wedged between two posts at the entrance to the bridge.  The frame of the bicycle was bent.  Officer Boynton left the gully for no more than three minutes to survey the area.  When he returned, the whiskey bottle was missing from the first cart.  He had to enlist another officer to help him pry the bicycle from between the posts before they could move the second cart off the bridge.  The officers identified David Skene as the owner of the bicycle and discovered that he had loaned it to defendant.

Officer Boynton later spoke with defendant at the police station.  Defendant claimed that he did not know how the golf carts got to Lake Storey and that he simply came across them while riding bicycles with a friend.  He identified his friend as Jason Fahland.  He said they were carrying their bicycles across the bridge when one of them yelled "cops."  At that point, he said Fahland dropped his bicycle on the second golf cart and they ran.  After further interrogation by another officer, defendant apologized to Officer Boynton for lying about "taking the golf carts and the damage he’d done."

Officer Dennis Shepherd testified that he interviewed defendant at the police station on February 19, 1998.  During their interview, defendant said he and Fahland had been drinking whiskey and rode their bicycles to the golf course.  They began "messing around" with some golf carts and got two of them started.  Defendant said he told Fahland, "[i]t’s not a real good idea."  They subsequently drove the carts "out onto the greens, started racing on the golf course and at least drove through one fence."  Then they drove the carts over to Lake Storey and got one of them stuck on a bridge.

Officer Jesse Perez testified regarding photographs he took of the damage at the golf course.  The photographs showed tracks indicating that carts had been driven in the fairway and green areas.  They also showed damage to several battery chargers, carts, wooden posts along a cart path, and a wooden fence.

Robert Davison (Superintendent of Parks for the City of Galesburg) testified that the damage to the golf course amounted to $548.  He also testified that "[t]here was a lot more damage done to the carts and the cart areas," although he did not provide a monetary estimate of this damage.

Defendant testified that he and Fahland rode bicycles to the golf course on the night in question.  He was wearing a backpack containing his portable stereo.  He had consumed almost a full bottle of whiskey and was intoxicated.  He said Fahland began "messing with one of the golf carts" trying to get it started.  He also said he mentioned to Fahland that they should leave the area.  Fahland eventually started the cart, put his bicycle
(footnote: 1) on it, and drove toward the golf course.  Defendant then jumped on another cart and started it.  He put his bicycle on the cart and drove off after Fahland.  He testified that he only took the cart to catch Fahland and make him stop.

Fahland drove to Lake Story where he tried to cross a bridge and got his bicycle lodged between two posts.  Defendant tried to help him free the bicycle, but they saw a spotlight and fled.  Defendant hid in the woods and was later arrested when he rode away on his bicycle.  He testified that he did not have a bottle of whiskey in the golf cart he was driving (the first cart Officer Boynton saw), and he denied causing any damage to the golf course.

Judge Stewart ultimately found defendant guilty of the charged offense.

II. Motion for New Trial

Defendant reviewed the trial transcript and expressed concern to Harrell about certain inconsistencies in the State’s evidence.  Harrell then filed a motion for a new trial based on the inconsistencies, which were as follows: (1) Officer Boynton testified that the color of the bicycle on the second golf cart was royal blue magna, but his police report identified the color as black green magna; (2) he also testified that the backpack and the portable stereo were together on the passenger seat of the second cart (consistent with the police reports), but he later mentioned that the backpack was on the floorboard; (3) the State’s witnesses only testified regarding fence damage on hole number 12, but the police reports also identified turf damage; (4) Robert Davison testified that ruts were dug into the greens, but the only necessary repair was "rolling" them; (5) the "testimony of restitution" indicated damage amounting to $2,000, but the police reports indicated that the two carts found at Lake Storey only sustained damage amounting to $500 each; (6) at one point the State’s witnesses used the word "several" to describe five golf carts, but at another point they used the word "several" to describe 30 battery chargers; and (7) the State’s witnesses testified regarding various other items of damage that were not included in the police reports.

Judge Stewart subsequently conducted a hearing at which defendant testified under Harrell’s direct examination.  During this testimony, defendant asserted that Harrell should have cross-examined the State’s witnesses regarding the aforementioned inconsistencies.  He also asserted that his case should have been assigned to a different trial judge, noting that he had been tried before Judge Stewart in a previous matter.  He said he told Melidis to request a new judge when they appeared in court on his initial trial date.  However, Melidis never moved for a substitution of judges.

Judge Stewart ultimately denied the motion for a new trial, stating that: (1) the points argued in the motion did not change his assessment of defendant’s guilt; and (2) defendant had not presented evidence of judicial bias or prejudice to warrant a substitution of judges.

III. Sentencing Hearing

At the sentencing hearing, Harrell called defendant to testify in mitigation.  During this testimony, defendant denied being at the golf course on the night in question and accused Harrell of telling him to lie at trial about being there.  After hearing recommendations from both parties, Judge Stewart sentenced defendant to 2½ years in the Department of Corrections.

ANALYSIS

I. Hearing on Motion for New Trial

During the hearing on his motion for a new trial, defendant claimed that Harrell rendered ineffective assistance of counsel by inadequately cross-examining the State’s witnesses.  He also claimed that Melidis was ineffective for failing to request a substitution of judges.  On appeal, he claims that Judge Stewart erred in failing to replace Harrell with a new attorney at the hearing.  He argues that Harrell operated under a conflict of interest because he elicited testimony regarding errors that he and Melidis allegedly committed.

When a defendant alleges ineffective assistance of counsel in a conflict of interest context, we determine whether a conflict actually existed by assessing the merits of the underlying ineffectiveness claim.  
People v. Taylor
, 146 Ill. App. 3d 45, 496 N.E.2d 263 (1986); 
People v. Johnson
, 98 Ill. App. 3d 228, 232, 424 N.E.2d 610, 614 (1981) ("the underlying allegation of incompetence determines whether an actual conflict of interest exists").  To establish ineffective assistance of counsel, a defendant must show that: (1) his attorney’s representation fell below an objective standard of reasonableness; and (2) he was prejudiced by the deficient representation.  
Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984); 
People v. Albanese
, 125 Ill. 2d 100, 531 N.E.2d 17 (1988).  The second prong of this standard is satisfied only when 
"there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  
Strickland
, 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068-69.  
A reviewing court may dispose of an ineffectiveness claim by finding insufficient prejudice without first assessing the reasonableness of the attorney’s representation.  
Strickland
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; 
Albanese
, 125 Ill. 2d 100, 531 N.E.2d 17.

We conclude that neither Harrell nor Melidis rendered ineffective assistance of counsel.  Defendant was not prejudiced by Harrell’s failure to cross-examine the State’s witnesses regarding the inconsistencies mentioned in his motion for a new trial.  The following statement from Judge Stewart, with which we agree, manifests a lack of prejudice: "I don’t find that there’s anything that was presented in the motion that would have made a difference or change my mind about the defendant’s guilt."  Additionally, defendant is challenging the manner and scope of Harrell’s cross-examination, an area that falls within the ambit of trial strategy and cannot sustain an ineffectiveness claim.  
People v. Williams
, 246 Ill. App. 3d 1025, 1035, 617 N.E.2d 87, 95 (1993) ("any allegations of incompetency of counsel in regards to cross-examination are questions of trial strategy *** and, as such, are not subject to review by a reviewing court"); 
People v. Thomas
, 176 Ill. App. 3d 514, 531 N.E.2d 84 (1988).

Defendant was also not prejudiced by Melidis’ failure to request a substitution of judges.  Defendant’s problem was his credibility, not the judge before whom he was tried.  He hid from the officers investigating the crime scene; he lied about not knowing how the golf carts got to Lake Storey; he subsequently apologized for lying and admitted to "taking the golf carts and the damage he’d done"; then, at trial he denied causing any damage and claimed that he only took a golf cart to catch Fahland and make him stop.  Judge Stewart based his finding of guilt on defendant’s lack of credibility.  At the conclusion of the trial, he explained his finding to defendant as follows: "because you told *** so many different stories in this incident, I simply find your version to be not credible in relation to what the officers testified to today."  Any trial judge would have faced the same credibility determination.  Under the circumstances of this case, we cannot say that a reasonable probability exists that a different judge would have reached a different conclusion.  Additionally, we note that a judge is not disqualified from hearing a case merely because he presided over a previous case involving the same defendant.  
People v. Vance
, 76 Ill. 2d 171, 390 N.E.2d 867 (1979).

Since neither Harrell nor Melidis rendered ineffective assistance of counsel, we conclude that Harrell did not operate under a conflict of interest at the hearing on defendant’s motion for a new trial.  Accordingly, Judge Stewart did not err in failing to replace Harrell with a new attorney.

II. Sentencing Hearing

Defendant also claims that Judge Stewart erred in failing to appoint a new attorney during his sentencing hearing when he alleged that Harrell instructed him to lie at trial.  We note, however, that a trial judge has discretion "to conclude that a defendant’s conduct or pursuit of an otherwise legal right is frivolous and merely an attempt to frustrate the administration of justice."  
People v. Hardeman
, 203 Ill. App. 3d 482, 490, 560 N.E.2d 1198, 1203 (1990).  This discretion encompasses a defendant’s claim that his attorney suborned perjury.  
People v. Cordevant
, 297 Ill. App. 3d 193, 696 N.E.2d 1233 (1998).  
We will not overturn a judge’s conclusion that such a claim is frivolous unless the conclusion constitutes an abuse of discretion. 
Hardeman
, 203 Ill. App. 3d 482, 560 N.E.2d 1198.  An abuse of discretion occurs only when the judge’s conclusion is manifestly unjust or palpably erroneous.  
People v. Anderson
, 112 Ill. 2d 39, 490 N.E.2d 1263 (1986).

After hearing defendant’s subornation of perjury claim, Judge Stewart explained:

"It’s still a case about credibility even at this point in time ***.  You were not believable at trial.  You are not believable today.  You have told so many stories to so many people including to this Court.  Now today you’ve added a new story by telling me you weren’t even there and so everything that you said was--was the subornation of perjury by your lawyer.  If that’s, in fact, the case, then you haven’t demonstrated it."

Thus, Judge Stewart disregarded defendant’s subornation of perjury claim because he concluded that the claim was an unbelievable attempt to frustrate the administration of justice.  Under the facts of this case, we cannot say that the judge’s conclusion was manifestly unjust or palpably erroneous.

Defendant cites 
People v. Brown
, 40 Ill. App. 3d 562, 352 N.E.2d 15 (1976), to support his argument.  In 
Brown
, this court held that the defendant’s subornation of perjury claim against his attorney created a "readily apparent" conflict of interest requiring appointment of a new attorney.  The defendant’s perjury admission placed him at the scene of the crime (he admitted to lying when he testified that he was not at the scene).  Additionally, his attorney expressed a desire to withdraw from the case, and the judge ordered the State’s Attorney to investigate the subornation of perjury claim.  The facts of the instant case are clearly distinguishable from those of 
Brown
.  Here, defendant’s perjury admission was less credible because it was self-serving (taking him away from the scene of the crime) and undercut by his previous acts of dishonesty.  Furthermore, Harrell did not express a desire to withdraw from the case, and his representation was not simultaneous with a court-ordered subornation of perjury investigation.  Thus, there was no "readily apparent" conflict of interest at defendant’s sentencing hearing.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the Circuit Court of Knox County.

Affirmed.

HOMER and KOEHLER, JJ., concurring.

FOOTNOTES
1:
This was actually the bicycle defendant had borrowed from David Skene.  Defendant was riding his own bicycle.