NOTICE

Decision filed 04/08/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 170140-U

NO. 5-17-0140

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Christian County. |
| | ) | |
| v. | ) | No. 12-CF-137 |
| | ) | |
| CHRISTOPHER A. HARWOOD, | ) | Honorable |
| | ) | Bradley T. Paisley, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Justices Wharton and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where the circuit court's denial of the defendant's postconviction petition was not manifestly erroneous, and any argument to the contrary would lack merit, the defendant's appointed attorney on appeal must be granted leave to withdraw as counsel and the judgment of the circuit court must be affirmed.

¶ 2    In 2013, the defendant, Christopher A. Harwood, pleaded guilty to aggravated arson and was sentenced to imprisonment for 10 years, all in accordance with a fully negotiated plea agreement between him and the State. In 2016, he filed a petition for relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2016)). Eventually, the circuit court held an evidentiary hearing on the postconviction petition, and it subsequently denied the petition. The defendant now appeals from the denial order.

1

¶ 3    The defendant's appointed attorney on appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks merit, and on that basis OSAD has filed with this court a motion to withdraw as counsel, along with a memorandum of law in support of the motion. See *Pennsylvania v. Finley*, 481 U.S. 551 (1987). OSAD served the defendant with a copy of its motion and memorandum. This court provided the defendant with ample opportunity to file a *pro se* response, brief, memorandum, etc., objecting to OSAD's motion or explaining why this appeal has merit, but the defendant has not taken advantage of that opportunity. This court has examined OSAD's *Finley* motion and memorandum, as well as the entire record on appeal. For the reasons that follow, this court has determined that this appeal does indeed lack merit. Accordingly, OSAD's *Finley* motion must be granted, and the judgment of the circuit court must be affirmed.

¶ 4                                    BACKGROUND

¶ 5    In September and October 2012, the State charged the defendant with arson (720 ILCS 5/20-1(a) (West 2010)), residential arson (*id.* § 20-1.2), and aggravated arson (*id.* § 20-1.1(a)(1)). In November 2012, a Christian County grand jury returned a superceding indictment charging the defendant with those same three offenses. All three charges stemmed from a September 2, 2012, fire at a residence on West Vandeveer Street in Taylorville, Illinois.

¶ 6    From the start of the case in September 2012 until late November 2012, the defendant was represented by public defender Michael Havera. In late November 2012, the circuit court granted Havera leave to withdraw as counsel and appointed attorney Gregory Grigsby as substitute counsel.

¶ 7    In December 2012, the defendant filed, through attorney Grigsby, a motion to suppress statements that the defendant had made to police interrogators within a few days after the West

2

Vandeveer Street fire. In the suppression motion, the defendant alleged that he did not knowingly waive his rights and that his statements were involuntary.

¶ 8    On January 28, 2013, the circuit court held a hearing on the defendant's suppression motion. The court heard testimony from witnesses, including the two police interrogators and the defendant. The defendant testified that he lacked any memory of being arrested or interrogated, due to his consumption of 45 Valium pills and other drugs during the two days prior to his arrest. The court also viewed a videotape recording of the interrogation. At the end of the hearing, the court denied the suppression motion, commenting that the evidence could not support a finding that the defendant was so grossly intoxicated that he had lost his capacity to waive his rights.

¶ 9    On February 1, 2013, the defendant, attorney Grigsby, and a prosecutor appeared before the circuit court. The attorneys informed the court that a plea agreement had been reached, and that the defendant would plead guilty to aggravated arson in exchange for a sentence consisting of imprisonment for 10 years followed by mandatory supervised release (MSR) for 3 years, and the two other counts against him would be dismissed. The court admonished the defendant as to the nature of the aggravated-arson charge and the possible penalties therefor, and the defendant indicated his understanding. The court reviewed the stated terms of the plea agreement, and the defendant indicated that he understood the agreement and wanted to plead guilty to aggravated arson. Continuing, the court admonished the defendant as to his right to plead guilty or not guilty, his right to a trial by a jury or by the court alone, his rights at trial, including his right to testify or to remain silent, the presumption of innocence, and the State's burden of proof, and the defendant indicated his understanding of all these matters. In response to further queries from the court, the defendant indicated that nobody had made any promises outside the terms of the plea agreement, and nobody had threatened or coerced him, in an effort to persuade him to plead guilty, and that

3

he was pleading guilty freely and voluntarily. The defendant pleaded guilty to aggravated arson and signed a written plea of guilty. The court found that the defendant understood the charge, the possible penalties, and his rights, and it further found that he was pleading guilty voluntarily. The prosecutor supplied a detailed factual basis for the plea; in short, the defendant used gasoline in order to set fire to a house where an ex-girlfriend resided. The court found the factual basis sufficient. The defendant waived his right to a presentence investigation report. The court pronounced the agreed-upon sentence of 10 years in prison and 3 years of MSR. Finally, the court admonished the defendant as to his appeal rights.

¶ 10    The defendant did not move to withdraw his guilty plea. He did not otherwise attempt to appeal from the judgment of conviction.

¶ 11    On January 28, 2016, almost three years after the guilty plea and sentencing, the defendant filed through postconviction counsel an "amended petition for post-conviction hearing." (Despite the caption, this petition was, in fact, the defendant's first petition for postconviction relief, a point that postconviction counsel later clarified for the circuit court.) In his postconviction petition, the defendant claimed that (1) his guilty plea was not knowing and voluntary; (2) his fitness was "in question" from the time of his arrest, but plea counsel failed to request a fitness evaluation; (3) even though the defendant wanted a jury trial, plea counsel "advised him against proceeding to trial and failed to adequately discuss trial strategy or otherwise sustain necessary contact with the [d]efendant"; (4) plea counsel "intimidated the [d]efendant by suggesting a trial would result in the [d]efendant receiving a thirty (30) year sentence and never seeing his daughter again"; (5) plea counsel failed to investigate the case adequately; and (6) the defendant possessed "exculpatory evidence that if presented to a jury would likely result in a finding of not guilty." The claimed "exculpatory evidence" consisted of (i) the absence of fingerprint evidence linking the defendant

to a gasoline can that the police had collected as evidence in this case, (ii) the absesnce of any evidence linking the defendant to a shoe print that police found at the scene of the arson, and (iii) factual misstatements made by the defendant during his interrogation by police—misstatements that, according to the defendant, indicated that the police had provided him with information in hopes of obtaining a confession.

¶ 12    Weeks after the postconviction petition was filed, the State filed a motion to deny the petition. Postconviction counsel filed a certificate of compliance with Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013).

¶ 13    On December 12, 2016, the circuit court held an evidentiary hearing on the defendant's postconviction petition. At the hearing, the defendant called three witnesses—Jennifer Harwood, Michael Havera, and Gregory Grigsby—and he testified on his own behalf. Jennifer Harwood, the defendant's former wife, testified that she spoke with the defendant, more than once, in the days prior to his arrest in connection with the fire at his ex-girlfriend's house, and during those conversations, she shared with the defendant information about the fire, information that various Taylorville police officers had shared with her. When she viewed the defendant's videotaped interrogation, she had the impression that he was simply repeating the information that she had relayed to him. Michael Havera, the public defender who represented the defendant from the start of the case in September 2012 until late November 2012, testified at the evidentiary hearing. He did not remember many specifics about the case, but at the request of the defendant's postconviction counsel, he read aloud from the transcripts of three different hearings held in October and November of 2012. The transcripts showed that at those three hearings, Havera represented to the circuit court that the defendant had a strong desire to proceed to trial, without delay.

5

¶ 14    Also at the evidentiary hearing, the defendant called plea counsel Gregory Grigsby as a witness. Grigsby testified that he had been unable to locate his file in this case, but he was confident that he had reviewed with the defendant the discovery in this case, though he could not remember the number of times. Grigsby recalled filing a motion to suppress statements that the defendant had made during his recorded interrogation by police, and he recalled the circuit court's hearing on that motion. At the time the suppression motion was being adjudicated, Grigsby testified, there was no issue of whether the defendant had learned solely from his wife the various case-related facts that he mentioned during the police interrogation. Grigsby did not recall that the defendant ever had stated that he was familiar with case-related facts solely because his wife had told him of those facts. During the course of his representation of the defendant in this case, Grigsby recalled, the State presented him with various plea offers, and negotiations eventually resulted in a plea offer that included a prison sentence of 10 years. Grigsby did not specifically recall discussing the plea offers with the defendant, but he was confident that such discussions had taken place.

¶ 15    Grigsby emphatically denied forcing the defendant to plead guilty and also denied telling him that if he insisted on going to trial, he would never see his child again. Instead, Grigsby testified, he merely explained the risks inherent in going to trial, including the possibility of receiving the maximum prison sentence of 30 years if the trial ended in a verdict of guilty. The decision to plead guilty was entirely the defendant's decision, Gribsby maintained. As for the defendant's fitness to stand trial or to plead guilty, Grigsby testified that he never saw any indication of unfitness, and that the defendant always comprehended the nature of the charges and the possible penalties and always was able to assist him with the defense in this case. Grigsby did not recall the defendant's ever giving him a list of potential witnesses, and he did not think that he

6

ever spoke with any potential witnesses. On the day of the guilty plea hearing, and in the few days beforehand, the defendant never told Grigsby that he did not want to plead guilty.

¶ 16    Finally, the defendant testified at the evidentiary hearing. According to the defendant, he was not thinking clearly at the time of his arrest or during the day after his arrest, due to his ingestion of a large quantity of drugs and a deep depression. After he began to think clearly again, he asked the court for a lawyer. When he met his public defender, Michael Havera, he told Havera that he was innocent and wanted to go to trial. After Havera withdrew from the case and Grigsby was appointed as substitute counsel, Grigsby met with the defendant on only a couple of occasions. Each time they met, the defendant expressed his strong desire for a trial, but Grigsby always "shut [him] down" by declaring that the defendant would "get 30 years" if he went to trial, refusing to discuss possible defenses. Grigsby generally refused to discuss the case with the defendant. He never reviewed the written discovery with him, but merely handed it to him. As for the interrogation video, it lasted 1 hour, but the two of them watched only 15 or 20 minutes of it. The defendant's ex-wife repeatedly tried to contact Grigsby, according to the defendant, but Grigsby refused to speak with her. Due solely to Grigsby's refusal to discuss discovery, possible defenses, or trial strategy, and his unpreparedness for trial, the defendant decided to plead guilty; he felt that he did not have any other realistic choice.

¶ 17    The State did not call witnesses at the evidentiary hearing. At the close of the hearing, the court gave both parties an opportunity to file written closing arguments. In the weeks afterward, both parties submitted written arguments. The State, in its written argument, implied that the defendant's testimony and Jennifer Harwood's testimony were unworthy of belief, and that attorney Grigsby's testimony was credible.

¶ 18    On March 21, 2017, the court entered a docket-entry order denying the defendant's postconviction petition.  The court explicitly found that Grigsby's testimony at the evidentiary hearing was credible.

¶ 19    On April 13, 2017, the defendant filed a notice of appeal from the circuit court's denial order, thus perfecting the instant appeal.  The circuit court appointed OSAD to serve as the defendant's counsel on appeal.

¶ 20                                    ANALYSIS

¶ 21    The defendant appeals from the circuit court's order denying his petition for postconviction relief, an order entered following an evidentiary hearing.  As previously noted, the defendant's appointed attorney on appeal, OSAD, has concluded that this appeal lacks merit, and on that basis it has filed a *Finley* motion to withdraw as counsel, along with a legal memorandum discussing potential issues in this appeal.  For the reasons that follow, this court agrees with OSAD that this appeal lacks merit.

¶ 22    The Post-Conviction Hearing Act (Act) provides a criminal defendant with a procedural mechanism for asserting that his federal or state constitutional rights were substantially violated during the proceedings that resulted in his conviction.  725 ILCS 5/122-1(a)(1) (West 2016); *People v. Smith*, 2015 IL 116572, ¶ 9.  A proceeding under the Act is a collateral proceeding, not an appeal from the judgment of conviction.  *People v. English*, 2013 IL 112890, ¶ 21.  A postconviction proceeding begins with the defendant's filing a petition for postconviction relief. 725 ILCS 5/122-1(b) (West 2016).  Potentially, a postconviction proceeding has three stages, the third of which includes an evidentiary hearing on the defendant's postconviction petition.  *People v. Tate*, 2012 IL 112214, ¶ 9.  At the evidentiary hearing, the defendant has the burden of proving, by a preponderance of the evidence, the constitutional violation(s) that he alleged in his petition.

8

*People v. Coleman*, 2013 IL 113307, ¶ 92. The circuit court acts as factfinder at the hearing. It determines witness credibility and the weight to be given particular testimony and other evidence, and it resolves any conflicts in the evidence. *People v. Domagala*, 2013 IL 113688, ¶ 34. When the circuit court denies a postconviction petition after an evidentiary hearing, this court will not reverse the ruling unless it is manifestly erroneous. See, *e.g.*, *People v. Ortiz*, 235 Ill. 2d 319, 333 (2009). Manifest error is error that is "clearly evident, plain, and indisputable." (Internal quotation marks omitted.) *People v. Morgan*, 212 Ill. 2d 148, 155 (2004).

¶ 23    In the memorandum accompanying its *Finley* motion, OSAD discusses whether the defendant, at the evidentiary hearing on his postconviction petition, succeeded in proving by a preponderance of the evidence that plea counsel provided constitutionally ineffective assistance, and whether the circuit court therefore erred manifestly when it denied the petition. OSAD states that the defendant, in his postconviction petition, claimed that plea counsel was ineffective (1) for failing to request a fitness evaluation for the defendant, (2) for intimidating the defendant into pleading guilty, and (3) for failing to discuss trial strategy adequately, failing to consider certain exculpatory evidence, and failing to seek the dismissal of the charges on speedy-trial grounds.

¶ 24    Contrary to OSAD's impression, the defendant did not claim during the postconviction proceeding that plea counsel was ineffective for failing to seek the dismissal of charges on speedy-trial grounds. In his postconviction petition, the defendant mentioned the speedy-trial requirement, but only in connection with his allegation that plea counsel's "intimidation and lack of diligence" caused him to plead guilty despite his strong desire for a trial. The defendant did not allege, whether in his petition or at the evidentiary hearing, that the statutory speedy-trial period had expired sometime prior to his plea of guilty. (Indeed, in his petition, he seemed to acknowledge that he entered his guilty plea prior to the speedy-trial period's expiration.) Setting aside the

supposed speedy-trial-related issue, this court will discuss all of the other potential ineffective-assistance issues discussed by OSAD. A claim of ineffective assistance of counsel presented in a postconviction petition is judged under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). A defendant must show that (1) his attorney's performance was deficient and (2) the deficient performance prejudiced him. *Id.* at 687-88.

¶ 25    In the memorandum supporting its *Finley* motion, OSAD first discusses the potential issue of whether the defendant proved at the evidentiary hearing that plea counsel provided ineffective assistance when he failed to request that the defendant be evaluated for fitness to stand trial or to plead guilty and be sentenced. At the evidentiary hearing, the defendant testified that he had ingested a large quantity of drugs, and suffered from a deep depression, during the few days prior to his arrest, which occurred in early September 2012. However, he did not present any evidence suggesting a lack of fitness at the time he pleaded guilty and was sentenced, which occurred in early February 2013. Meanwhile, plea attorney Grigsby testified that during the time he represented the defendant in this case, which was from late November 2012 through the plea hearing and sentencing, he never saw any indication that the defendant was unfit, and the defendant always comprehended the nature of the charges and the possible penalties and always was able to assist him with the defense. Furthermore, the defendant informed the court, in response to the court's careful questioning at the plea hearing, that he understood the charges against him, the possible penalties that he faced, his right to a trial, his rights at trial, and the content of the plea agreement. Unfitness to stand trial or to plead guilty and be sentenced consists of an inability to understand the nature and purpose of criminal proceedings or to assist in the defense against criminal charges. 725 ILCS 5/104-10 (West 2012). A criminal defendant is presumed fit. *Id.* Only a *bona fide* doubt about a particular defendant's fitness will warrant a fitness hearing. *People*

10

*v. Cordevant*, 297 Ill. App. 3d 193, 202 (1998). Here, the defendant did not give plea counsel any reason to doubt his fitness, and therefore counsel could not be faulted for not requesting a fitness evaluation.

¶ 26 Second, OSAD discusses the potential issue of whether the defendant proved at the evidentiary hearing that plea counsel intimidated him into pleading guilty. Before the circuit court accepted the defendant's guilty plea at the February 2013 hearing, it thoroughly admonished and questioned the defendant in accordance with Illinois Supreme Court Rule 402 (eff. July 1, 2012), and the defendant indicated that he was pleading guilty freely and voluntarily, with knowledge of his legal predicament and of his legal rights, and that nobody had threatened or coerced him in an effort to persuade him to plead guilty. At the evidentiary hearing on the postconviction petition, the defendant testified as to how his plea counsel would always "shut [him] down" when he expressed his strong desire to proceed to trial, but plea counsel emphatically denied forcing the defendant to plead guilty and maintained that the defendant's decision to plead guilty was entirely his own. The circuit court, as the factfinder at the evidentiary hearing, was free to believe plea counsel's testimony and to disbelieve the defendant's.

¶ 27 Finally, OSAD discusses the potential issue of whether the defendant proved at the evidentiary hearing that plea counsel failed to discuss trial strategy adequately and failed to consider certain exculpatory evidence. As OSAD notes, the defendant did not describe, or even hint at, any particular "trial strategy" that plea counsel should have discussed with him, and the claim involving so-called "exculpatory evidence" was simply not pursued at the evidentiary hearing. To resolve this particular potential issue of ineffective assistance of counsel, it is enough to say that the defendant did not even attempt to prove that he had been prejudiced by plea counsel's alleged failures.

11

¶ 28                    CONCLUSION

¶ 29    At the evidentiary hearing on his postconviction petition, the defendant plainly failed to prove by a preponderance of the evidence the constitutional violations that he had alleged, leaving the circuit court with no real choice but to deny the postconviction petition. Any argument to the contrary would lack merit. Accordingly, OSAD is granted leave to withdraw as the defendant's attorney on appeal, and the judgment of the circuit court is affirmed.

¶ 30    Motion granted; judgment affirmed.